473 A.2d 1325

**Charles D. BAKER**

v.

**Yvonne L. BAKER.**

**No. 994, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 16, 1984.

**620**

George E. Burns, Jr., Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on brief, for appellant.

No brief or appearance by appellee.

Submitted before LISS, WEANT and BELL, JJ.

BELL, Judge.

Charles Baker was found in contempt of an order of the Circuit Court for Washington County which enjoined him from harassing his wife and trespassing upon her property. He was sentenced to 89 days in jail. He protests that he was improperly convicted of criminal contempt in a civil contempt proceeding. We believe his position is well taken and we reverse.

Yvonne Baker lodged a Bill of Complaint against her husband seeking a divorce and other relief. That additional relief included a request for an injunction. An ex parte order issued that commanded Mr. Baker to:

immediately cease all contact in person, by telephone or otherwise with Plaintiff, Yvonne Baker, and also cease any trespass upon the premises leased by Plaintiff, and her personal property and automobile;

Before two months had passed, pursuant to a petition alleging a violation of that order, Mr. Baker was directed to show cause why he should not be held in contempt because of that disobedience.

A hearing date was scheduled and both parties appeared with counsel. The court heard testimony and in an oral opinion pronounced "you have wilfully violated the order of this court that was entered on March the 17th 1983, and you have violated it not only once but on numerous occasions." The court committed him to jail forthwith.

The court on May 31, 1983, entered a written decree noting Mr. Baker's contempt and "ORDERED, that the Defendant be committed to the Washington County Detention Center for 89 days."

This appeal followed that disposition.

This is not the first time we have been asked to delineate the distinction between civil and criminal contempt. This is not without reason because there are many acts, which can by their nature, serve as the basis for both proceedings.

But they have a different purpose and the procedure differs markedly as does the level of proof and the terms of punishment.

In criminal contempt the primary purpose is to preserve the court's authority and ability to conduct orderly proceedings and to punish any disobedience of its orders. It is a contempt that is directed toward the power and dignity of the court. The primary purpose of civil contempt, on the other hand, is to enforce private rights and coerce compliance to orders of the court for the benefit of private litigants. *See State v. Roll and Scholl*, 267 Md. 714, 728, 298 A.2d 867 (1973).

We need to direct our attention then to what kind of contempt was before the court, in this instance.

Judge McWilliams detailed the distinctions between these two types of contempt in *McDaniel v. McDaniel*, 256 Md. 684, 687–88, 262 A.2d 52 (1970) holding:

> The distinction between civil and criminal contempt has not escaped us. Chief Judge Marbury quoted from the opinion of Mr. Justice Lamar in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 [31 S.Ct. 492, 55 L.Ed. 797] (1911):
>
>> 'It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such

cases is inflicted not as punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. *The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.'* (Citation and footnote omitted) (Emphasis added).

Applying this test, since the sentence is solely punitive in nature, the case would appear to be one of criminal contempt.

■ The punishment ordered is appropriate in criminal contempt cases. Since it is punishment for past misconduct it may not necessarily be capable of remedy, therefore, no purging provision is necessary. The acts complained of would constitute constructive contempt, that is contempt committed outside the presence of the court as opposed to direct contempt, which is contempt committed in the presence of the court. As with all criminal charges, there are certain due process requirements. Maryland Rules of Procedure P 4 together with Rule 104 (Service of Process) set forth the basic requirements of due process for constructive contempt. It may be initiated by the court, the state's attorney, or anyone having actual knowledge of the contempt. It proceeds by a Show Cause order which shall "state the essential facts constituting the contempt charged," then service, an answer, and a hearing. The degree of proof required in a criminal contempt case differs from that of civil contempt—

a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt. *State v. Roll, supra* 267 Md. at 728, 298 A.2d 867.

■ This case fails to comply procedurally with the rules for criminal contempt in that the Rule to Show Cause failed to state the essential facts constituting the contempt charged. Of even more significance, however, the court

failed to find that the evidence had established the charge beyond a reasonable doubt.

Judge McWilliams moved on, however, in distinguishing civil and criminal contempt and added in *McDaniel, supra,* 256 Md. at p. 688, 262 A.2d 52;

> More recently, in *Winter v. Crowley,* 245 Md. 313 [226 A.2d 304] (1967), we indicated that Mrs. Winter's refusal to comply with an order directing the delivery of the custody of her children to Crowley resulted in a civil contempt. In addition to quoting with approval the Supreme Court's distinction in *Gompers,* Judge Barnes adopted a delineation by the Supreme Court of Pennsylvania in respect of the factors which generally point to a civil contempt; for the Court, he said:
>
> ' * * * (1) the complainant is usually a private person as opposed to the State: (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilfull or contumelious that the court is impelled to act on its own motion. *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956) * * *.' *Id.* [245 Md.] at 317 [226 A.2d 304].

Returning then to the case sub judice, it is apparent that the court might have found that the acts were crimes or the conduct was so wilful as to cause the court to act on its own motion, but it is equally evident that the proceedings were civil and not criminal. Counsel for Mr. Baker stated at the start of the hearing that "this is a civil contempt proceeding. Neither counsel for Mrs. Baker nor the court took issue with that position. The court presaged its ultimate error by responding "one of the ways you purge yourself by [sic] contempt is serving a period of incarceration." Not only because counsel understood the case was one of civil contempt, but because the case comports with the more

detailed factors set forth above from the *McDaniel* case and approved in *Lee v. State,* 56 Md.App. 613, 468 A.2d 656 (1983), we will hold it is a case of civil contempt. The complainant is a private person (2) the contempt petition was entitled "civil" in the original suit; (3) the purpose of the relief was for Mrs. Baker's benefit, and (4) the relief was primarily for her benefit. An action might have been brought for criminal contempt, but the fact remains that criminal proceedings were not instituted.

In *State v. Roll, supra,* the Court of Appeals approved the five factors to be considered in making a determination between civil and criminal contempt and referred to the difficulty in distinguishing between them:

Today, the line between civil and criminal contempt is frequently hazy and indistinct. Often the same acts or omissions may constitute or at least embrace aspects of both. When this is the case, an alleged contemnor may be answerable in either a civil or criminal contempt proceeding. But, in this State, the distinction between the two types of contempt has been preserved and is important. 267 Md. at 728, 298 A.2d 867.

We reiterate Judge Thompson's words in *Hare v. Hare,* 21 Md.App. 71, 72, 318 A.2d 234 (1974) when he emphasized the "necessity of \* \* \* determining prior to trial the nature of the contempt proceedings," and added "the form of punishment does not determine the nature of the proceeding, but rather from the nature of the proceedings flows the manner of punishment." *Hare, supra* 75, 318 A.2d 234.

Specifically, considering a fixed term of incarceration for civil contempt the Court of Appeals held in *McDaniel, supra* 256 Md. at page 689, 262 A.2d 304:

As earlier noted, imprisonment for civil contempt is 'inflicted not as punishment, but is intended to be remedial by coercing the defendant to do what he has refused to do.' (Quoting from *Gompers, supra* ). It would seem to follow then, that '[i]mprisonment cannot be considered coercive unless the contemnor is kept in prison only until

he complies with the relevant court order.' Comment. *The Coercive Function of Civil Contempt,* 33 U.Chi.L. Rev. 120, 130 (1965). For this reason the authorities are in almost unanimous agreement that the imposition of a fixed term of imprisonment for civil contempt is improper where the contemnor is given no opportunity to purge himself of the contempt. (Footnote omitted).

It has been said that in imposing a sentence for civil contempt the prisoner must "carry the keys of" [1] his prison in his own pocket. It is evident that those keys did not jingle in Mr. Baker's pocket.

The proceeding here was civil in nature from the onset to the decision. The hearing was permeated with preponderance of the evidence as the standard of proof. It was civil in all respects save one. It failed to provide Mr. Baker with a method of acceding to the requirements of the court, thereby gaining his freedom. For this reason, we reverse.

JUDGMENT REVERSED.

COSTS TO BE BORNE BY APPELLEE.

---

1. *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902).