487 A.2d 680

**Lynne W. MITCHELL**

**v.**

**Paul Alan MITCHELL.**

**No. 497, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 8, 1985.

Alan B. Moldawer, Rockville, for appellant.

Barry H. Helfand, Rockville, for appellee.

Argued before BISHOP, GETTY and KARWACKI, JJ.

BISHOP, Judge.

Lynne W. Mitchell appeals an order of the Circuit Court for Montgomery County (Calvin R. Sanders, J.) which granted appellee, Paul A. Mitchell, exclusive temporary custody

of the parties' children "pending any further hearings on the issues of custody and related matters...." *See,* Md. Cts. & Jud.Proc.Code Ann. § 12–303(3)(x) (1984 Cum.Supp.); *Etter v. Etter,* 43 Md.App. 395, 397–98, 405 A.2d 760 (1979). She also challenges the court's finding of contempt which was based upon her taking the children out of the jurisdiction in violation of a previously issued order regarding custody of the children.

Lynne and Paul Mitchell were married in 1977 and have two children—Leigh, age eight, and Kathleen, age five. The parties separated in April, 1982, and thereafter each filed a bill of complaint seeking a divorce *a mensa et thoro* and custody of the two children.

On September 8, 1982, a "Consent Order" was entered regarding custody and child support, *pendent lite.* Both parties consented to this order through their respective attorneys. The order, signed by a circuit court judge, was filed with the Clerk of the Circuit Court for Montgomery County. The order provided, in pertinent part,

ORDERED, *pendente lite,* that the parties shall have joint custody and control of the minor children, subject to the following:

(a) That the children shall reside with the wife [subject to certain exceptions not at issue here]

. . . . .

(e)(i) In order that each party's rights may not be impaired, each shall maintain a residence within a radius of fifty (50) miles of the City of Rockville. This provision, however, shall not prevent either party from taking the children on brief trips.

. . . . .

(iii) If for any reason, one party desires to establish a residence outside the aforesaid radius, that party shall consult with the other and endeavor to secure his or her written consent thereto. Such consent shall not be unreasonably withheld. If such consent is not forthcoming, and the moving party wishes to pursue the matter, such

party shall file for such release in the Circuit Court in any county in the State of Maryland in which that party and the minor children reside. In the event either party moves without the written consent of the other without seeking prior Court authorization, the custody or support provisions of this Agreement shall be suspended and the moving party agrees to indemnify and pay unto the registry of the Court, a reasonable amount as attorney's fees, lodging and travel expenses and court costs necessitated by the other party seeking to visit, obtain custody of the minor children, obtain visitation with the minor children or attempts to hold the moving party in contempt for a violation of this Order....

It is undisputed that on July 19, 1983, appellant left Maryland with the children, moved her residence to Nevada, and instituted an action for divorce and custody there. She did not seek appellee's approval prior to the change of residency, as required by the consent order. In response, appellee filed a "Petition for Contempt and Change of Custody" in the Circuit Court for Montgomery County, and a hearing was held before the Domestic Relations Master. *See* Rule 596 c 2, 6.[1]

In his report, the Master recommended that appellant not be held in contempt. He concluded that

While there is certainly a violation of the Order and certainly a contumelious act on the part of the plaintiff, a purge provision which is required in civil contempt could not be determined. *Antonelli vs. Antonelli*, 44 Md.App. 384 [408 A.2d 773].

The Master also recommended that there be no modification of custody from that established by the consent order. He reasoned that

Since contempt was not considered, the mere moving by the defendant would not seem to justify a modification

1. Rule 596 is now Rule 2–542.

from joint custody to custody to the plaintiff. *Jordan v. Jordan,* 50 Md.App. 437 [439 A.2d 26].

Appellee filed exceptions to this report and requested a hearing in the circuit court. After hearing argument from counsel for each of the parties, and considering the exceptions filed and motion in opposition, the circuit court issued the order appealed which found the appellant in contempt for taking the children out of the jurisdiction in violation of the consent order, and granted custody of the children to the appellee "pending any further hearings on the issues of custody and related matters...."

Appellant challenges that order, and asks

I. Whether the decision of the lower court in changing the custody of the parties' two minor children was clearly erroneous and an abuse of discretion?

II. Whether the lower court was clearly erroneous in finding the appellant in contempt of court and erred as a matter of law in entering an order of contempt without a purge provision?

## I.

The applicable standards of review for child custody cases was summarized by the Court in *Elza v. Elza,* 300 Md. 51, 475 A.2d 1180 (1984):

This Court set forth the boundaries of appellate review applicable to child custody cases in *Davis v. Davis,* 280 Md. 119, 372 A.2d 231, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). In that case, we examined the extent to which Maryland Rule 886 (applicable to this Court) and Rule 1086 (applicable to the Court of Special Appeals), which govern the review of cases tried by a court without a jury, control in child custody disputes. Our analysis resulted in the conclusion that three distinct standards of appellate review apply to such matters. They are as follows:

When the appellate court scrutinizes factual findings, the clearly erroneous standard of Rules 886 and 1086

applies. If it appears that the chancellor erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court views the ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion. 280 Md. at 125–26, 372 A.2d 231 (footnote omitted).

300 Md. at 55–56, 475 A.2d 1180.

Appellant launches the following two-pronged attack seeking to establish that the chancellor abused his discretion by granting the appellee temporary custody of the children. Whether considered independently or in combination, these contentions do not establish abuse of discretion.

First, relying upon the fact that the chancellor did not receive any evidence, appellant contends that the chancellor should have deferred to the Master's findings of fact and left them undisturbed unless determined to be clearly erroneous. *Wenger v. Wenger*, 42 Md.App. 596, 402 A.2d 94, *cert. granted*, 286 Md. 755 (1979), *appeal dismissed per stipulation*, January 2, 1980.

In that case, we discussed, in detail, "the proper function of the chancellor vis-a-vis a Report and Recommendation of a Domestic Relations Master." *Wenger*, 42 Md.App. at 597, 402 A.2d 94:

When an appellate court, absent clear error, defers to a trial court, it defers not only to the fact-finding but to any legitimate verdict, disposition or judgment emanating from that fact-finding. The function of the chancellor vis-a-vis the master is quite different. He may, of course, order *de novo* fact-finding in whole or in part. Where he chooses to rely exclusively upon the report of the master, however, he should defer to the fact-finding of the master where that fact-finding is supported by credible evidence and is not, therefore, clearly erroneous. The chancellor,

however, (unlike the appellate court) always reserves unto himself the prerogative of what to make of those facts—the ultimate disposition of the case.

. . . . .

If the chancellor had no choice but to affirm the recommendation of the master (or his finding of the ultimate, conclusory fact which is indistinguishable from the recommendation) unless it was "clearly erroneous," this would be the forbidden delegation of the judicial function.

*Id.* at 602–03, 402 A.2d 94.

In the case *sub judice,* there is no dispute regarding findings of fact—that appellant moved with the children in violation of the consent order. Rather, appellant challenges the chancellor's findings on the "second-level, conclusory or dispositional facts" regarding the best interest of the children, and the final determination regarding custody. *See Wenger,* 42 Md.App. at 607, 402 A.2d 94. *Wenger* makes clear that these determinations, "the ultimate disposition of the case," must be made independently by the chancellor. *Id.* at 604, 608, 402 A.2d 94.

Appellant then contends that the only evidence regarding the best interest of the children was that the appellant left the jurisdiction with them and was residing in Nevada, and that a custodial parent's change of residence does not justify a change of custody. *Jordan v. Jordan,* 50 Md.App. 437, 439 A.2d 26, *cert. denied,* 293 Md. 332 (1982). This contention overlooks the circumstances surrounding the "change of residence" in the case *sub judice.*

In *Jordan,* the appellee had custody of one of the parties' children pursuant to a separation agreement which was merged into a decree of divorce *a vinculo matrimonii.* 50 Md.App. at 438, 439 A.2d 26. The appellant petitioned the court for a change of custody when he learned that the appellee contemplated marriage and a change of residence from Potomac, Maryland to South Africa. *Id.* at 442, 439 A.2d 26. He contended that the move "to South Africa is in and of itself a sufficient change in circumstances to justify

a change in custody." *Id.* We affirmed the chancellor's order denying a change of custody and allowing the appellee to move to South Africa with the child because the chancellor was not clearly erroneous in concluding, implicitly, that the move would be in the best interest of the child, *id.* at 444, 439 A.2d 26, and the "great weight of authority in this country permits a minor child to move freely with the custodial parent." *Id.* at 446, 439 A.2d 26. In addition, we noted that

> We were advised at argument that the appellee in this case has postponed marrying her fiance pending the outcome of these proceedings. We think it would be cruel and inhumane to require her to choose between her child and her fiance particularly when the exercise of true love for the child *by both parties* could provide an acceptable accommodation in their best interests and the best interests of the child.

*Id.* at 451, 439 A.2d 26. (Emphasis in original).

In the case *sub judice,* however, we are not dealing solely with a question of change of residence by a custodial parent, and there is ample evidence from which the chancellor could conclude that it would be in the best interest of the children if the appellee had temporary custody of them. We agree with the chancellor's conclusion.

 The appellant's taking the children and changing their residence from Maryland to Nevada violated the consent order regarding custody *pendente lite* and was, therefore, contemptuous. *See Winter v. Crowley,* 245 Md. 313, 314, 317–18, 226 A.2d 304 (1967). Pursuant to the terms of that order, joint custody arrangements were suspended as a result of appellant's actions. Furthermore, by denying the appellee his right to custody under the order, the appellant may be violating the child abduction statute.[2] *See* Md.Fam-

---

**2.** Maryland is a signatory to the Uniform Child Custody Jurisdiction Act. As appellee points out in his brief the Commission on Uniform State Laws in referring to the problem of parental abduction observed:

ily Law Code Ann. § 9–305(1), (2) (1984). Finally, by filing another action for divorce and custody in Nevada, appellant was initiating a disruptive multi-jurisdictional divorce and custody battle. This was a sufficient basis for the court to grant exclusive temporary custody to appellee. There is nothing in the record to support a conclusion that this was a punitive action by the court based on appellant's contumacious conduct.

The chancellor properly concluded that appellant was not a proper party to have custody of the children under these circumstances, and there is no contention that appellee is not fit to have custody. The court's approval of the joint custody arrangement under the consent order indicates that the court found the appellee to be a proper custodian of the children. After finding that the appellee "is a fit and proper person to have the temporary exclusive care, custody and control of the minor children," the court in its written order awarded to the appellee "The temporary exclusive custody ... of [the] children pending any further determination after a hearing...." This makes it at least implicit that there will be a future hearing before the award of permanent custody.

## II.

■ As a general rule, the failure to obey a lawful order of court constitutes contempt. *See,* Md.Cts. & Jud.Proc. Code Ann. § 1–202(a) (1984); *Goldsborough v. State,* 12 Md.App. 346, 356, 278 A.2d 623 (1971), *see also, Mattingly*

---

The harm done to children by these experiences can hardly be overestimated. It does not require an expert in the behavioral sciences to know that a child, especially during his early years and the years of growth, needs security and stability of environment and a continuity of affection. A child who has never been given the chance to develop a sense of belonging and whose personal attachments when beginning to form are cruelly disrupted, may well be crippled for life, to his own lasting detriment and the detriment of society.

P. Hoff, Interstate and International Child Custody Disputes: A Collection of Materials, American Bar Association, (3d ed. 1983) p. 53.

*v. Houston,* 252 Md. 590, 593, 250 A.2d 633 (1969). In the case *sub judice,* the chancellor found the appellant in contempt because she moved out of the jurisdiction in violation of the consent order. He did not, however, impose any sanction or penalty.

Appellant contends that the chancellor was clearly erroneous in finding that her actions constituted contempt, and that he erred as a matter of law by entering the order finding her in contempt because it did not contain a purge provision, *see, Elzey v. Elzey,* 291 Md. 369, 374, 435 A.2d 445 (1981); *State v. Roll and Scholl,* 267 Md. 714, 728, 298 A.2d 867 (1973); *Meyers v. State,* 23 Md.App. 275, 278, 326 A.2d 773 (1974), *cert. denied,* 276 Md. 747 (1975). We cannot reach these contentions, however, because the mere finding of civil contempt without the imposition of a penalty or sanction is not a final appealable order or judgment. *Pocketbook Workers v. Orlove,* 158 Md. 496, 148 A. 826 (1930).

At first blush, it would appear that the order at issue satisfies the requirements of Md.Cts. & Jud.Proc.Code Ann. § 12–304 (1984) which provides that

(a) Scope of review.—Any person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court, including an interlocutory order, remedial in nature, adjudging any person in contempt, whether or not a party to the action.

(b) Exception.—This section does not apply to an adjudication of contempt for violation of an interlocutory order for the payment of alimony.

A closer examination of the statute, however, proves otherwise.

Section 12–304 was enacted in 1973 when the legislature adopted the new Courts and Judicial Proceedings article. 1973 Laws of Md. 1st Special Session ch. 2. The revisors' notes to that section state that

there is an unusual history with respect to appeals in contempt cases. At common law, the judgment of the trial court in a contempt case was conclusive and not reviewable by any other tribunal in the absence of express statutory authorization; *Kelly v. Montebello Park Co.,* 141 Md. 194 [118 A. 600] (1922). It was not until after *Kelly* had been reaffirmed in *Ex Parte Sturm,* 152 Md. 114 [136 A. 312] (1927) that Maryland adopted the predecessor of Art. 5, § 18; see Ch. 357, Laws of 1927. In view of this historical situation, it is thought wise to retain an express authority for appeals in contempt cases.

*Id.* at p. 360.

1927 Laws of Md. ch. 357 provided in pertinent part, that "[a]ny person who has been adjudged in contempt of court by any order or judgment, passed to preserve the power or to vindicate the dignity of the court, shall have the right to take an appeal from such order or judgment...." In addition, 1927 Laws of Md. ch. 593 provided, *inter alia,* that an appeal could be taken "from an order remedial in its nature adjudging in contempt of court any party to a cause or any person not a party thereto (except orders passed requiring the payment of alimony)...."

The Court construed this language in *Pocketbook Workers, supra,* and dismissed an appeal from an order which adjudged the defendants guilty of contempt but imposed no punishment for the contempt. 158 Md. at 504–05, 148 A. 826. The Court held:

There is no injury to be redressed. It is true that the Act of 1927, chapter 593, embodied in article 5, section 31, of the Code, has given a right of appeal 'from an order remedial in its nature adjudging in contempt of court any party to a cause or any person not a party thereto (except orders passed requiring the payment of alimony)'; but we take it that this right of appeal, like rights given by the statutes, in similar unqualified terms, of appeal from other adjudications, supposes the existence of some injury from the orders to be redressed by appeal. The orders in

the contempt proceedings are not, therefore, now subject to review on appeal.

*Id.* at 505, 148 A. 826.

■ This analysis is dispositive of the case *sub judice.* The provisions contained in Chapters 357 and 593 were retained without substantial change in 1957 Laws of Md. ch. 399 sec. 4, codified at Md.Ann.Code art. 5 §§ 7(e), 18 (1957). The revisors' notes to Md.Cts. & Jud.Proc.Code Ann. § 12–304 make it clear that the section encompasses former article 5, sections 7(e) and 18. The legislature further expressed its intent not to alter prior substantive law with the enactment of the new Courts & Judicial Proceedings Article, by stating in the preamble that the article was designed to "revise, restate and recodify the laws ... pertaining to courts and proceedings therein," 1973 Md. Laws, Spec.Sess., ch. 2. *See, Della Ratta v. Dixon,* 47 Md.App. 270, 283, 422 A.2d 409 (1980).

Accordingly, we hold, as did the Court in *Pocketbook Workers, supra,* that an order which merely finds a person in civil contempt but does not impose a penalty or sanction for the contempt is not a final appealable order. *See, Director of Fin., Pr. Geo's. Co. v. Cole,* 296 Md. 607, 613–14, 465 A.2d 450 (1983); *Chain Bike Corp. v. Spoke 'N Wheel, Inc.,* 64 Ohio App.2d 62, 410 N.E.2d 802, 803 (1979); *see generally,* 4 Am.Jur.2d *Appeal and Error* § 170 (1962); *see also, Herd v. State,* 37 Md.App. 362, 364, 377 A.2d 574 (1977) ("commitment for contempt must provide not only a penalty but the footpath for avoidance of the sanction."). In *Cole, supra,* the Court held that an appeal from an oral finding of contempt followed by a docket entry was improper because it was noted "before there was a written completed order." 296 Md. at 613, 465 A.2d 450. According to the Court,

The trial judge's oral ruling and the docket entry evidencing the same do not constitute a contempt order from which an appeal may properly be taken. At that time, the court noted no sanction or purging provision, both

essential elements of a valid contempt order. *See Elzey v. Elzey,* 291 Md. 369, 374, 435 A.2d 445 (1981); *see generally State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973).

*Id.* at 613–14, 465 A.2d 450.

JUDGMENT AFFIRMED AS TO CUSTODY; APPEAL DISMISSED AS TO THE ISSUE OF CONTEMPT;

COSTS TO BE PAID BY APPELLANT.