519 A.2d 1311

**Russell R. THORNE**

v.

**Edna JoAnn THORNE.**

**No. 614, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 16, 1987.

28

Melissa M. Moore, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, State's Atty. for Prince George's County and Paula Mays, Sp. Counsel for the Office of Child Support Enforcement, Upper Marlboro, on the brief), for appellee.

Submitted before MOYLAN, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Russell R. Thorne, appellant, appeals from the judgment of the Circuit Court for Prince George's County holding him in "willful contempt of court" and sentencing him to 179

days in the County Detention Center for failure to pay child support. He presents three issues for our review:

1. Was the evidence sufficient to show that appellant willfully failed to pay court ordered child support?
2. Did the trial judge err in his hybrid treatment of a criminal contempt?
3. Did the trial court err in delegating its authority to determine whether an adverse judgment and a contempt order were appropriate to appellant's ex-wife?

Finding merit in the first, we will reverse.

## The Facts

Edna Nutwell, the former Mrs. Thorne, obtained a final divorce from appellant on September 25, 1979. A decree entered in the case, Equity No. 77–2483, awarded her custody of the parties' minor children and ordered appellant to pay, through the Support Collection Unit, $173.60 per month for their support. The decree also provided that if his former wife received financial assitance from the Department of Social Services, appellant was to reimburse the Department to the extent of such assitance.

It being alleged that appellant had failed to make support payments required by the decree, a Petition To Cite For Contempt Or For Entry of Judgment was filed in case No. 77–2483 on May 25, 1984.[1] After considerable procedural skirmishing, a contempt hearing was held before the court on March 19, 1986. At that hearing, evidence was adduced through testimony and proffer, as to which no objection was taken, that appellant never paid any child support and, further, that the amount then owed was $17,536.42, of which $11,903.60 was due to his former wife and the remainder, $5,632.92, was due to Social Services. After in-

---

1. Subsequent to the divorce, a prior petition had been filed in the case on June 20, 1981. That petition resulted in a finding of contempt and a sentence of 179 days to the County Detention Center, appellant to be released upon payment of $3,000.00 on arrears upon posting a $10,-000.00 bond.

quiring of Mrs. Nutwell as to her wishes, the court entered judgment in her favor for the amount found to be due her and advised her that the court would collect the ongoing support payments. This left for consideration the $5,632.92 due Social Services.

Concerning appellant's ability to pay, the court had previously been advised by appellant's counsel, that "today [appellant]'s not working because he has a broken hand" and, consequently, "is unable to pay, is unable to work at this time." The court's inquiry, made of appellant, into the circumstances surrounding his broken hand revealed that appellant broke his hand while working in a junk yard when "[a] car flipped on it". Appellant denied entitlement to, or receipt of, worker's or unemployment compensation. Nevertheless, the court opined:

Well, I think you ought to get yourself a lawyer because I think that gives you the current ability to pay because if you work for an employer and you get injured on the job you have a right to sue them if they don't have workmen's compensation.

The court then ruled:

... I find you in willful contempt of court.

I sentence you to 179 days in the County Detention Center. You may purge yourself by doing the following. You may purge yourself by paying arrearages of $5,632.92. The purge will be as follows. By paying $1,000.00 he may be released from jail and then he may pay through his Workmen's Compensation and/or any other claims he has and collect [sic] the sum of $200.00 a month on the arrearage.

Is this an arrearage only, folks, now except for the ongoing payments? No, its not an arrearage only. You're a disgrace. You know, any man who cannot support his children and come up with all the excuses that you come up with there's not much more that I can say. Take him away, Mr. Sheriff.

Appellant filed a Petition For Writ of Habeas Corpus on May 9, 1986. Seeking inquiry into the legality of his present incarceration, he alleged in the petition that he was without the present ability to purge himself of contempt. Specifically, appellant referred to his inability to post the $1,000.00 cash bond, which was a condition of his release.[2] Following a hearing, the hearing judge passed an order that provided:

ORDERED that this court finds the Defendant to be indigent, and without funds or assets to purge himself of contempt and, it is also Ordered that the defendant, Russell Ryson Thorne, ought to be and hereby is granted a modification of his $1,000.00 cash bond to release on personal recognizance and, it is further Ordered that the defendant appear again before the Circuit Court of [sic] Prince George's County in the above referenced matter, when required by process to do so.

With this action, the hearing that had been scheduled for June 4, 1986, on appellant's Motion To Set Appeal Bond, was rendered moot.[3] This is reflected by the docket entry for June 4, "Appeal bond—moot. Defendant is released," and by appellant's motion to dismiss the hearing, in which appellant stated: "Defendant was released from the County Detention Center on personal recognizance"; that he is "not now incarcerated", and that he does not need the court to set a bond to secure his release from incarceration pending appeal.

### Contempt: Civil or Criminal; Ability to Pay

Although appellant contends that the contempt at issue here is criminal, he proffers that the trial judge treated it as a hybrid and, therefore, erred. Noting that the petition

---

2. Following his being held in contempt, a hearing was held before another judge of the Circuit Court for Prince George's County who, upon review of the matter, refused to change the sentence or the amount of the bond.

3. Although filed on May 9, 1986, the certificate of mailing indicates that the motion was mailed to the State's Attorney on May 1, 1986.

requested relief characteristic of both criminal and civil contempt, he directs our attention to the following: (1) the request for a judgment suggests civil contempt; (2) the parties were represented by the State's Attorney and the Public Defender respectively, indicating criminal contempt; (3) a definite sentence was imposed, again, consistent with criminal, not civil, contempt; (4) the sentence contained a purging provision, which is associated with civil, as opposed to criminal, contempt. Thus, he argues "[i]t is impossible to conclude whether the trial judge used the correct standard in what was clearly prosecuted as a criminal contempt ...".

Appellant also asserts that the evidence of record does not support the finding made by the court that he had the present ability to pay. He emphasizes that the evidence showed that his hand was broken, rendering him unable to work and thus unable to make any payments towards child support. Moreover, appellant says that, in view of his inability to work, the sentence did not contain a purging provision with which he could have complied. Appellant thus contends that the evidence is insufficient to show a willful failure on his part to pay the court ordered child support.

Before addressing the issue of appellant's ability to pay, it is necessary that we resolve the nature of the contempt proceeding at issue here. In Maryland, contempt is classified as either civil or criminal. *State v. Roll & Scholl,* 267 Md. 714, 727, 298 A.2d 867 (1973); *Baker v. Baker,* 58 Md.App. 619, 622, 473 A.2d 1325 (1984); *A.V. Laurins & Company, Inc. v. Prince George's County,* 46 Md.App. 548, 561, 420 A.2d 982 (1980). "[T]he line between civil and criminal contempt is frequently hazy and indistinct ... the same acts or omissions may constitute or at least embrace aspects of both." *Roll & Scholl,* 267 Md. at 728, 298 A.2d 867. There are, however, clear differences between the two.

"A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to

compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive. In this State, to these factors must be added the degree of proof required to establish a contempt—a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt."

*Roll & Scholl, supra.*

In deciding whether to classify a contempt as criminal or civil, it must be remembered that "the form of punishment does not determine the nature of the proceeding, but rather from the nature of the proceedings flows the manner of punishment." *Baker v. Baker,* 58 Md.App. at 625, 473 A.2d 1325; *Hare v. Hare,* 21 Md.App. 71, 75, 318 A.2d 234 (1974). *See Winter v. Crowley,* 245 Md. 313, 317, 226 A.2d 304 (1967).

Thus, where "(1) the complainant is . . . a private person as opposed to the State; (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; [and] (5) the acts complained of do not of themselves constitute crimes or conduct by the defendants so wilful or contumelious that the court is impelled to act on its own motion," the proceeding is ordinarily one for civil contempt. *Roll & Scholl,* 267 Md. at 729–80, 298 A.2d 867, quoting *Winter v. Crowley, supra. See also Baker,* 58 Md. at 624, 473 A.2d 1325.

The proceeding *sub judice* fully complies with each of the factors set out above: the complainant was a private person, the former Mrs. Thorne;[4] the contempt was filed as a continuation of the original action between the parties; the finding of contempt provided relief to the complainant; the relief requested was primarily for complainant's benefit; and the acts constituting the basis for the contempt finding were not themselves unlawful or such as to compel the court to act on its own motion. We conclude, therefore, that the contempt was civil, and not criminal.

■ Appellant focuses on certain aspects of the proceeding to prove that the contempt was criminal. All of his contentions are unavailing because they are without merit. That the State represents the complainant does not necessarily render the proceeding criminal. As the State aptly, and accurately, points out, such representation is pursuant to a legislative mandate. Maryland Fam.Law Code Ann. § 10–106 creates the Child Enforcement Administration. The duties of the Administration include collection and disbursement of support payments through established legal processes, § 10–108(a)(8) and (9), and the Administration is authorized to "approve for child support services any individual who: (1) cannot afford private counsel; and (2) files an application and pays a fee for the child support services as required by the Administration. § 10–109.[5] When engaged in a legal proceeding,[6] either the Administra-

---

**4.** The Department of Social Services was involved, but its involvement was solely as a result of having provided assistance to Mrs. Nutwell; consequently, its relationship, and entitlement to relief, was directly dependent upon Mrs. Nutwell's entitlement.

**5.** Although not defined, we construe "child support services" as related to the duties imposed upon the Administration, including the collection and disbursement of support payments.

**6.** Section 10–115(a)(1) defines "legal proceeding" to include a civil action for child support.

tion or a person approved for child support services is entitled to be represented by the State's Attorney.[7]

In the instant case, appellant did not raise the issue of the State's representation of Mrs. Nutwell before the court. Thus, the issue is not properly before us. Maryland Rule 1085. Nevertheless, were it before us, we would not, on this state of the record, conclude that representation was other than as provided by Maryland Fam.Law Code Ann. § 10–115.

It is of course indisputable that a defendant may be imprisoned for civil contempt so long as the purpose of the imprisonment is remedial and the contemnor has an opportunity to purge the contempt, that is to say, that he carries the keys to the prison in his pocket. *Baker*, 58 Md.App. at 625, 626, 473 A.2d 1325; *See Herd v. State*, 37 Md.App. 362, 364–65, 377 A.2d 574 (1977) ("When the Court of Appeals and this Court speak of a 'provision for purging' or 'opportunity for purging', we mean that the contemner (sic) must be afforded the chance to rid himself of guilt and thus clear himself of the charge."). That the sentence imposed is determinate, although characteristic of criminal contempt, does not necessarily mean that the contempt is criminal. *McDaniel v. McDaniel*, 256 Md. 684, 690, 262 A.2d 52 (1970). There, the defendant was found in civil contempt and sentenced to one year in the county jail, with the further requirement that part of his earnings be dis-

---

7. Section 10–115(b) provides: In a legal proceeding, the Administration or an individual whom the Administration approves for child support services shall be represented by:

 (1) The Attorney General;

 (2) The State's Attorney, if the State's Attorney has agreed to provide representation under subsection (c) of of this section; or

 (3) A qualified lawyer representing the Administration who is appointed by and subject to supervision and removal by the Attorney General.

Subsection (c) requires the State's Attorney to enter into a written agreement, with the Secretary of Human Resources and the county on or before September 1 of the preceding fiscal year to provide legal representation for a fiscal year. The agreement must provide for the provision and continuation of representation, as well as reimbursement.

bursed for child support. On appeal, he argued that the trial judge had no authority to order him confined for civil contempt for a fixed term. The Court of Appeals remanded the case because the trial judge did not provide for defendant's release in the event that he paid the arrearages before the expiration of the fixed term; however, the Court pointed out:

> It must not be supposed ... that the imposition of a fixed term of imprisonment for a civil contempt is invalid per se.... In ordinary circumstances, of course, a determinate sentence may be imposed provided the order of the trial judge allows the contemnor to be released if compliance is accomplished prior to the end of his term. As the author of a Comment in the Chicago Law Review put it:
>
>> "... no objection can be raised to the imposition of a determinate sentence if the contemnor is given the right to purge himself of the contempt. In such a case, if the contemnor retains the same defenses which would have been available to him had the commitment order been couched in terms of 'confinement until compliance,' the court has simply limited the potential term of imprisonment. To that, the contemnor certainly cannot object. Comment, *The Coercive Nature of Civil Contempt,* 33 U.Chi.L.Rev. 121, 130 (1965)."

256 Md. at 690–91, 262 A.2d 52.

■ Here, a purging provision was provided. In fact, it provided for purging on two levels: appellant could post a bond and thus remain free while he made the payments on the arrears required by the order, or he could pay the full amount of the arrears. Thus, the imposition of a determinate sentence did not, in this case, render the contempt criminal.

Appellant's final contention, that the case is captioned as a criminal case, is also without merit. As we have seen in the statement of facts, with the exception of correspondence and pleadings filed by appellant's counsel, the case is

captioned throughout the record as *Thorne v. Thorne,* rather than *State v. Thorne.*

■ Having concluded that the proceeding was one for civil contempt, it follows that the case was a civil case. Therefore, it is necessary for us to address an issue that neither party raised nor briefed. Maryland Rule 1028 a. requires that, "unless a statement is filed pursuant to Rule 1029 b[8] or unless otherwise ordered by this Court," a printed record extract must be filed in all civil appeals. "The printed extract shall contain such parts of the record as may reasonably be necessary for the determination of the questions presented by the appeal...." Md.Rule 1028 b.1. Because the rule, which is both precise and comprehensive as to the requirements of the printed extract, is to be read and carefully followed by counsel, *Kemp-Pontiac-Cadillac v. S & M Constr.,* 33 Md.App. 516, 521, 365 A.2d 1021 (1976), a sanction provided for failure to file the extract is dismissal of the appeal. *Allied Bail Bonds v. State,* 66 Md.App. 754, 756, 505 A.2d 918 (1986); *One 1983 Toyota v. State,* 63 Md.App. 208, 210, 492 A.2d 643, *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985). Presumably because he approached the case as a criminal case, appellant filed no extract. Although the State has at all times contended that the contempt was civil, it did not move to dismiss the appeal. Nevertheless, ordinarily we would dismiss the appeal on our motion since "[t]he effect of a failure to comply with Rule 1028b, simply stated, is: no sufficient record extract, no review." *Allied Bail Bonds,* 66 Md.App. at 755, 505 A.2d 918.

■ We exercise our discretion not to dismiss this appeal, however, *see Ebert v. Ritchey,* 54 Md.App. 388, 393, 458 A.2d 891 (1983); *Kemp-Pontiac-Cadillac, supra* 33 Md. App. at 524–25, 365 A.2d 1021, even though we have deter-

---

**8.** Rule 1029 b., pertaining to expedited appeals, provides:
Within 15 days after the filing of the joint election, the parties shall file with the clerk four copies of an agreed statement of the case, including the essential facts, as prescribed by Rule 1026 e....

mined that this is a civil case and even though we have been required to ferret out from the record some material necessary to the decision of the appeal. In exercising our discretion, we recognize that only the inferences to be drawn from the facts, and not the facts themselves, are in dispute and that the gravamen of the appeal is largely concerned with the proper characterization of the proceeding. We warn, however, it is counsel's responsibility to comply with the rules. When the issue is in dispute, counsel may not assume the nature of the proceeding. He or she must take precaution to ensure that if his or her assumption and argument as to the nature of the case is found wanting, all requisites for appeal have nevertheless been met. Thus, where there is doubt, a record extract should be supplied. The risk of non-persuasion on the issue of the nature of the case rests, as it must, with the appellant. We will not hesitate in the future to dismiss an appeal when and if we determine that counsel has guessed wrong.

Turning to the issue of the sufficiency of the evidence of appellant's ability to pay, we note that the Court of Appeals has clearly enunciated the test to be applied. In *Elzey v. Elzey*, 291 Md. 369, 374, 435 A.2d 445 (1981), the Court instructed:

> In all civil contempt proceedings, any order imposing a penalty upon the defendant must contain a purging provision with which the defendant has the ability to comply.... The "choice" must be the defendant's "as to whether [he can] comply."
>
> \* \* \* \* \* \*
>
> Consequently, with regard to civil contempt proceedings based upon the defendant's failure to comply with a decree ordering support payments, "imprisonment may be avoided by showing that one has neither the money nor the ability to pay." ... Moreover, the issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his present ability to pay. (citations omitted)

*See Johnson v. Johnson,* 241 Md. 416, 419–20, 216 A.2d 914 (1966) ("The purpose of imprisonment for contempt is to compel compliance with a court order but where the person alleged to be in contempt can establish a valid defense, such as the unintentional inability to obey the order, imprisonment is not proper."); *Rutherford v. Rutherford,* 296 Md. 347, 357, 464 A.2d 228 (1983). (Applying the *Elzey* test). *See also Turner v. State,* 307 Md. 618, 625–631, 516 A.2d 579 (1986), applying a similar test in the context of a violation of probation proceeding.

■ Moreover, even when a defendant's inability to pay is the result of his acts or omissions intended to frustrate the court's order, imprisonment for civil contempt is still inappropriate. In *Elzey,* a divorce decree, incorporating a settlement agreement, ordered the defendant to pay support to his wife. After passage of the decree, the defendant voluntarily retired and thus became financially unable to pay. The lower court found the decision to retire was not made in bad faith. Nevertheless, it held defendant in civil contempt of court and sentenced him to a term of imprisonment, subject to a purging provision. The Court of Appeals reversed. Concluding that the sentence did not contain a purging provision with which the defendant could have complied had he chosen to do so, the Court made the further point that, even if the defendant's decision to retire had been "a deliberate effort or wilful act of commission or omission ... committed with the knowledge that it would frustrate the order of the court", he still could not have been sentenced to jail for civil contempt. 291 Md. at 375–76, 435 A.2d 445, quoting *Roll & Scholl,* 267 Md. at 730, 298 A.2d 867. The appropriate remedy would have been to terminate the civil contempt proceeding and initiate one for criminal contempt. *Id.*

■ The uncontradicted evidence before the court was that appellant had broken his hand and had no present ability to work or to pay the support ordered. The court, however, found that he did. It determined that where an

injury is sustained on the job, in the absence of worker's compensation insurance, the injured party has the right to sue the employer. From this fact and by focusing on appellant's contingent future ability to pay, the court applied the incorrect standard and concluded that appellant had a "current ability to pay." That finding, on this record, was clearly erroneous. *See Turner, supra.* Nor can the result be justified on any other basis. As we have seen, the proceeding was civil and, furthermore, the court did not find that appellant's inability to pay was caused by a wilful or deliberate effort on his part to frustrate the court order. Consequently, the order sentencing appellant to imprisonment did not contain a purging provision with which appellant could comply. It was therefore improper.

■ Relying on *Mitchell v. Mitchell,* 61 Md.App. 535, 487 A.2d 680, *appeal dismissed,* 302 Md. 479, 488 A.2d 978 (1985), the State contends that the appeal is moot. Noting that the hearing judge, in granting appellant's Petition For Writ of Habeas Corpus, specifically determined that appellant was indigent and for that reason, released him from jail, it argues that appellant's sentence was thereby reduced to nothing more than a mere finding of contempt. Therefore, it continues, since a finding of contempt without imposition of a sanction is not a final appealable judgment, the appeal must be dismissed as moot. We disagree that the appeal is moot. While we do not quarrel with the holding or the logic of *Mitchell,* we find it inapposite to the situation *sub judice.*

"A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Attorney Gen. v. Anne Arundel County School Bus Contractors,* 286 Md. 324, 327, 407 A.2d 749 (1979). *See Mercy Hospital v. Jackson,* 306 Md. 556, 561, 510 A.2d 562 (1986); *Williams v. Williams,* 63 Md.App. 220, 225, 492 A.2d 649 (1985). Such

is not the case here. Despite his release from jail, appellant remains subject both to a finding of civil contempt and a sentence therefor. He "is entitled to seek exoneration through having the contempt set aside," *Jones v. State*, 61 Md.App. 94, 96, 484 A.2d 1050 (1984), and this Court can provide an effective remedy. *See Williams*, 63 Md.App. at 225–26, 492 A.2d 649. What we said in *Williams* is especially pertinent in the instant case:

> ... [T]here remain[s] in the records of the court [an order] which pertain[s] to appellant's being in contempt of court.... Were we to dismiss this appeal, [that order] would remain spread out among the records ... for all to see. While [it] may not ever be utilized and while [its] effect beyond mere existence is not known, and may be none, that existence, uncontradicted, gives substance to this appeal. We therefore reject the appellee's argument of mootness....

*Id.*, 63 Md.App. at 226, 492 A.2d 649.

In *Mitchell*, the court found the appellant in contempt but did not impose a penalty or sanction. Having determined that it was taken from an order that was not a final judgment, we dismissed the appeal as premature. 61 Md. App. at 545–48, 487 A.2d 680. We specifically did not reach the appellant's contention that the entry of the contempt order was error. 61 Md.App. at 545, 487 A.2d 680. The dismissal was thus based upon our lack of jurisdiction, *see Mitchell v. Mitchell*, 302 Md. at 480, 488 A.2d 978; *Eastgate Assoc. v. Apper*, 276 Md. 698, 701–03, 350 A.2d 661 (1976), rather than for mootness. No such defect exists in the judgment in this case.

██ In addition to being found in civil contempt, appellant was sentenced pursuant to that finding to a term of imprisonment. And, as we have seen, both the finding and the sentence still stand. The only effect of the habeas corpus proceeding was to modify appellant's "cash bond to

release on personal recognizance." He thus remains subject to imprisonment pursuant to the contempt order. Should he fail to pay the full amount due or make the periodic payments toward the arrears, as required by the order, even though his ability to pay may not have changed, he could, and probably would, be returned to court and required to serve out his sentence. That this option exists is reflected in the order entered in the habeas corpus proceeding; it requires appellant to "appear again before the Circuit Court [for] Prince George's County, in the above referenced matter, when required by process to do so." [9] We conclude, therefore, that, unlike in *Mitchell*, the order from which this appeal has been taken is a final judgment.

## Delegation of the Court's Authority

 Appellant finally argues that the court's inquiry of Mrs. Nutwell concerning how she wished the court to proceed was an improper delegation of authority. We find this argument to be totally without merit. We fail to understand how an inquiry of a party to the proceeding, followed by a decision by the court, can be construed as an improper delegation of authority. Furthermore, we previously found the proceeding to be one for civil contempt, intended to benefit the private party before the court. Certainly, the court's inquiry is perfectly consistent with the nature of the proceeding. There was no error in this regard.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

---

**9.** It should be noted that the docket entry reflecting the order states that the appellant was released on recognizance pending the outcome of the case.