539 A.2d 708

**Myron Elsworth FIELDS**

v.

**Carolyn Ann Bates Brown FIELDS.**

**No. 1184, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

April 7, 1988.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief) Baltimore, for appellant.

No appearance by appellee.

Argued before WILNER, GARRITY and ALPERT, JJ.

GARRITY, Judge.

Under date of March 10, 1988, this court issued its *per curiam* order reversing the judgment of the Circuit Court for Baltimore City which had found Myron E. Fields in contempt of court. We now explain why we took that action.[1]

Once again, we were asked to decide whether an indigent in a civil contempt proceeding is entitled to the assistance of appointed counsel—unless he has waived such right—prior to being sentenced to actual incarceration. We were also asked, again, whether any order in a civil contempt proceeding imposing a penalty must contain a purging provision with which the contemnor has the ability to comply. Our answer to both questions remained affirmative. We re-

---

[1] During oral argument on March 10, 1988, this court was advised by appellant's counsel, Assistant Public Defender Jose' Felipe' Anderson, that the appellant had remained incarcerated for nearly nine months since June 25, 1987 due to his inability to pay $2,000 to purge himself of the contempt.

versed and remanded this matter as the appellant was not afforded the benefit of counsel prior to being sentenced, nor was it established that he had the present ability to pay the amount required to satisfy the purging provision.

## Facts

On June 25, 1987, appellant Myron Elsworth Fields was scheduled to attend a show cause hearing for civil contempt in the Circuit Court for Baltimore City for having failed to pay child support pursuant to an October, 1985 order arising from the parties' divorce. Carolyn Ann Bates Brown Fields, appellee, appeared with her counsel and, after a brief wait for the appellant, Judge Kenneth L. Johnson ordered the hearing to proceed in the appellant's absence.[2]

Ms. Fields testified that the appellant had made only sporadic payments to her totalling approximately $500.00 pursuant to the October, 1985 order. Ms. Fields further indicated that she did not know whether the appellant was still employed at his last known place of employment.

The chancellor found arrearages in the amount of $9,175.00 and ordered judgment in that amount be paid at 10% interest. The chancellor also awarded counsel fees in the amount of $240.00 and issued a bench warrant for contempt.

Shortly after the case was heard, the appellant appeared in court and explained he was late because he had caught the wrong bus. The chancellor advised him that the hearing had already been held. The appellant related to the chancellor that he did not have an attorney and denied the chancellor's assertion that he was $10,000 in arrears, alleg-

---

2. The appellee in this case has failed to file a brief. Based on our review of the record extract and the appellant's brief, which was filed on his behalf by the State Public Defender, we will treat the facts as undisputed. *McHugh & Assoc. v. Comm. & Farm. Bk.*, 59 Md.App. 519, 522, 476 A.2d 736 (1984).

ing instead that he could not be more than "a couple hundred dollars" in arrears.

The appellant testified that in 1985:

I went back home with her and we lived together, and she was getting my paycheck every week, and I mean, per week, quite a sum, because I had my own business at that time, and I was making every bit of four or five hundred dollars a week, and she was getting my whole paycheck, say, from '85 until right now. It's a little ridiculous.

THE COURT: How much money do you make?

MR. FIELDS: How much money am I making right now?

THE COURT: Yes.

MR. FIELDS: I am working at an auto carwash right now and it fluctuates because the place has been under repair, and I get a few hours a day. Right now we are in full operation and I am back on my feet again, but right now I am on the other hand, I just went back and got another job, because there is not enough money. I was tired of just working like on good days, and so I am starting going to get another job and working regular hours.

THE COURT: Well, Mr. Fields, this Judge doesn't believe a word you said, and I have already held you in contempt.

MR. FIELDS: It's the truth.

THE COURT: Do you want to say anything before I impose a sentence upon you?

MR. FIELDS: It's the truth, what I am saying. My employer, he will testify to the fact what I am saying is the truth, and everybody else.

THE COURT: Do you want to pay the $2,000 before you go to jail or after?

MR. FIELDS: I would rather pay it before I go to jail.

THE COURT: When can you pay it?

MR. FIELDS: I have got to get some time in order to get it up.

THE COURT: What kind of time?

MR. FIELDS: At least 30 days.

THE COURT: The sentence of the Court is that you be sentenced to the Division of Corrections and you can purge yourself with the payment of $2,000.

In addition to the $400 you have to pay $500 a month on the arrears.

. . . . .

THE COURT: Take him, please, Sheriff.

### Right to Counsel

The chancellor found the appellant in civil contempt and sentenced him to an indefinite term of confinement subject to a $2,000 "purging" provision.

In *Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228 (1983), two cases concerning civil contempt proceedings for failure to pay child support were consolidated for appeal. In both instances the appellants declared that they were unrepresented by counsel and that they were unable to pay the amount set to "purge" their respective sentences for contempt.

Speaking on behalf of the Court regarding the defendant's rights to be represented by counsel, Judge Eldridge opined:

The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee a right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration. The right extends to every "critical stage" of the criminal proceedings. Because the present contempt proceedings were civil and not criminal, however, the right to counsel under the Sixth Amendment and Article 21 is not directly involved in these cases.

Nevertheless, the constitutional right to counsel is broader than the specific guarantee of the Sixth Amendment and Article 21 of the Declaration of Rights. Under certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constitut-

ing critical stages of criminal trials. Thus in *In re Gault* [387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)], *supra,* the Supreme Court held that as a matter of due process, the right to the assistance of counsel attached to *civil* juvenile delinquency proceedings because of "the awesome prospect of incarceration in a state institution."

In light of *Gault* and similar cases, the overwhelming majority of courts throughout the country have held that due process requires the appointment of counsel for indigents in *civil* contempt proceedings if they are sentenced to imprisonment. As pointed out by the United States Court of Appeals for the Eighth Circuit in *United States v. Anderson,* 553 F.2d 1154, 1156 (8th Cir.1977).

> "[d]eprivation of liberty has the same effect on the confined person regardless of whether the proceeding is civil or criminal in nature. We agree with the decisions ... and hold that the Constitution requires that counsel be appointed for indigent persons who may be confined pursuant to a finding of civil contempt."

*Id.* at 357–59, 464 A.2d 228 (citations omitted).

Judge Eldridge concluded:

> Therefore, under the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, an indigent defendant in a civil contempt proceeding cannot be sentenced to incarceration unless he has been afforded the right to appointed counsel. This does not mean that a constitutional right to appointed counsel attaches in every civil contempt proceeding involving an indigent defendant. Rather, we hold only that, under the due process requirements of the federal and state constitutions, an indigent defendant in a civil contempt proceeding cannot be sentenced to actual incarceration unless counsel has been appointed to represent him or he has waived the right to counsel.

*Id.* at 363, 464 A.2d 228 (citation omitted).

In the case *sub judice,* the appellant was neither represented by counsel nor was he informed of his right to counsel if indigent. He was clearly not asked whether he

was financially able to hire an attorney or whether he needed to have an attorney appointed. Consequently, it is apparent that he could not have waived his right to counsel knowingly and intelligently.

In light of the holding in *Rutherford*, we hold that the trial court was clearly in error in incarcerating the appellant without first informing him of his right to appointed counsel. (*See Jones v. Johnson*, 73 Md.App. 663, 536 A.2d 116 (1988) for discussion by Judge Bishop of procedure implementing right to assistance of counsel.)

### Ability to Pay

It has been held repeatedly that a defendant may be imprisoned for a civil contempt so long as the purpose of the imprisonment is remedial and the contemnor has been provided with an opportunity to purge the contempt. *Thorne v. Thorne*, 70 Md.App. 27, 519 A.2d 1311 (1987); *Baker v. Baker*, 58 Md.App. 619, 473 A.2d 1325 (1984); and *Herd v. State*, 37 Md.App. 362, 377 A.2d 574 (1977).

Speaking on behalf of the Court in *Elzey v. Elzey*, 291 Md. 369, 435 A.2d 445 (1981), Judge Eldridge observed:

> In all civil contempt proceedings, any order imposing a penalty upon the defendant must contain a purging provision with which the defendant has the ability to comply.... The "choice" must be the defendant's "as to whether [he can] comply."
>
> \* \* \* \* \* \*
>
> Consequently, with regard to civil contempt proceedings based upon the defendant's failure to comply with a decree ordering support payments, "imprisonment may be avoided by showing that one has neither the money nor the ability to pay." ... Moreover, the issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his present ability to pay. (citations omitted).

*Id.* at 374, 435 A.2d 445.

■ In the case at bar, there was an absence of any consideration by the chancellor to the repeated mandates

expressed by both appellate courts that any order imposing a penalty upon the defendant in a civil contempt matter must contain a purging provision with which the contemnor has the ability to comply. *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867, 69 A.L.R. 3rd 483 (1973); *McDaniel v. McDaniel,* 256 Md. 684, 689–90, 262 A.2d 52 (1970); and *Thorne v. Thorne, supra.* Indeed, it is evident that the chancellor immediately dismissed *any* utterance by Fields, much less that it would take him at least 30 days to raise $2,000. The trial judge made no finding that the appellant had the ability to pay the amount required to purge the contempt.

There is no question that the power of the court to punish for contempt is a most useful weapon in the court's arsenal to bring about justice and fair play. It has been used by the court in its role as guardian of justice for centuries. Its very awesomeness and magnitude of power, however, demands vigilant care and discretion in its use so as to avoid arbitrary or oppressive application. *State v. Roll and Scholl,* 267 Md. at 717, 298 A.2d 867.