# JOHNSON *v.* JOHNSON

[No. 157, September Term, 1965.]

*Decided February 15, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Thomas L. Hennessey* for appellant.

*Donald T. A. Fair,* with whom were *Edward S. Vidali* and *Fair, Vidali, Wagner & Evering* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The question posed by this appeal is whether, under the circumstances of this case, a father, charged with the support of his children, should have been imprisoned until he purged himself of contempt for failure to pay in full the arrearages that had accumulated over a period of several years.

When the father was divorced from the mother of their three children on October 19, 1961, he was ordered to pay the mother fifty dollars a week for the support of the children. Although he complied with the order for about twenty months, he thereafter began decreasing the weekly payments until he was paying only twenty-five dollars a week. As a consequence, the arrearages became progressively greater. This, in part at least, was attributable to the fact that his net weekly income had been reduced to approximately eighty-four dollars a week. The salary he received was his only source of income other than the rents from a double house he owned but operated at a loss due to its location and condition.

During the period the arrearages were accumulating, the mother, besides seeking an increase in the amount of payments from time to time, filed several petitions for attachment of the father for failure to make the payments as stipulated, and he, in turn, filed several petitions for a reduction in the amount

418

of the support payments. The court, however, despite repeated requests therefor, would not consider a reduction in the weekly payments to an amount the father could reasonably pay.

At a hearing on October 7, 1963, when the arrearages were $380, the lower court dismissed all pending petitions. Thereafter, the arrearages having increased to $1160, the court, at another hearing on June 15, 1964, on new petitions for attachment and reduction of payments filed in the interim, denied a request for reduction and found the father guilty of contempt, but held the matter in abeyance. On this occasion, the father, accepting a suggestion the court made, promised to sell the double house in order to pay the arrearages. Apparently because the promise had not been promptly complied with, a third hearing was held on October 9, 1964. Thereat, the father agreed to reduce the asking price by several thousands of dollars and renewed his promise to sell the property and apply the net proceeds to the then arrearage of $1550 after first paying the mortgage indebtedness and a commission for making the sale. When the property was finally sold the net proceeds amounted to $1968.28. The father having remarried (with the understanding, we are told, that the contracting parties would pay their own cost of living) before the sale of the property, the second wife, who was an attorney at law, refused to waive her dower interest and was paid $656.09 before she would consent to execute the deed. This left a balance of $1312.19, out of which was paid $560.40 for the repairs necessary to put the property in saleable condition and for other incidentals, leaving a net balance of $751.79 to be applied to the arrearages which by that time amounted to $1965. At the final hearing on March 9, 1965, the court, having questioned the necessity of preparing the property for sale and challenged the right of the second wife to claim a dower interest in the property, concluded that the father had acted in bad faith and reinstated the effectiveness of the previously entered finding of contempt. And this appeal followed.

The father contends that through no fault of his own he was unable to make the payments required by the court, that the lower court erred in refusing to reduce the amount of the support payments and that he should not have been adjudged to

be in contempt. Whether or not the father was subject to incarceration depends on whether he was able to meet the obligation imposed on him by the support order.

Under appropriate circumstances there is, of course, no reason why the obligation to support dependent children may not be enforced by an attachment for contempt. While § 38 of Article III of the Constitution of Maryland prohibits the imprisonment of a person for debt, the amendments of 1950 and 1962 expressly declared, among other things, that a decree of court for the support of minor children (including illegitimate children) does not constitute a debt. Since the adoption of the amendments, as was pointed out in *McCabe v. McCabe,* 210 Md. 308, 123 A. 2d 447 (1956), *Bradford v. Futrell,* 225 Md. 512, 171 A. 2d 493 (1961) and *Corley v. Moore,* 236 Md. 241, 203 A. 2d 697 (1964), the obligation to support under a decree or order of court, like alimony, has been considered to be, not a debt, but a duty enforceable by attachment. And the person, so attached, may be imprisoned unless he can purge himself of the contempt by paying or by showing that he has neither the estate nor the ability to pay. This is the rule that has been followed with respect to the obligation to pay alimony. See *Dickey v. Dickey,* 154 Md. 675, 141 Atl. 387 (1928); *Oles Envelope Corp. v. Oles,* 193 Md. 79, 65 A. 2d 899 (1949); *Schwartzman v. Schwartzman,* 204 Md. 125, 102 A. 2d 810 (1954); *McCabe v. McCabe, supra,* at p. 314 of 210 Md. Obviously, as the amendments indicate, there is no reason why a different rule should be applied to the obligation to pay support for minor children. See the concurring opinion of Hammond, J., in *Johnson v. Johnson,* 202 Md. 555, 561, 98 A. 2d 276, 279 (1953).

If the father was unable to meet his obligation because he had neither a sufficient estate nor the then ability to pay, as the record seems to indicate, the court was not justified in incarcerating him. For a year or more he had claimed that he was unable to meet the obligation imposed on him by the decree. He had filed several petitions for the reduction of the support payments which were either denied or not even heard. And when he offered to testify as to his earning capacity and his ability generally to meet his obligation, the court stated that

it was not inclined to take his testimony. Until he was given an opportunity to show that he had neither the estate nor the ability to pay his obligation and failed to make such a showing, he should not have been incarcerated. The purpose of imprisonment for contempt is to compel compliance with a court order but where the person alleged to be in contempt can establish a valid defense, such as the unintentional inability to obey the order, imprisonment is not proper.

We shall therefore, pursuant to Maryland Rule 871 a, remand the case without affirmance or reversal for a hearing on the petition of the father for reduction of support payments and the introduction of evidence as to his present ability to meet his obligations. In so doing, due regard should be given to the fact that child support payments (like alimony) may be modified with respect to such payments as have accrued as well as those not yet due. See *Bauman v. Bauman,* 239 Md. 379, 211 A. 2d 759 (1965) ; *Winkel v. Winkel,* 178 Md. 489, 15 A. 2d 914 (1940).

> *Remanded without affirmance or reversal for further proceedings not inconsistent with this opinion; appellant to pay the costs.*