## EMERSON MARCELLUS ELZEY *v.* CHARLENE WROTEN ELZEY

[No. 64, September Term, 1980.]

*Decided October 8, 1981.*

The cause was argued before MURPHY, C. J., and ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Robert E. Farnell, III,* for appellant.

No brief filed for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This is an appeal from an order in a civil contempt proceeding, sentencing the petitioner to 120 days in jail or until he purged himself of contempt. The proceeding arose because of petitioner's failure to make weekly support payments to his former wife, as required under a settlement agreement incorporated in a divorce decree. The petitioner, now seventy-five years old, had been a plumber operating his own business, and he had made the required payments until he decided to retire. Since he retired, as found by the trial court, he has been and is financially unable to make the payments, and a substantial arrearage has developed. The trial court held that, because petitioner's voluntary act of retirement had placed him in his present position of financial inability, the court had no choice other than to send petitioner to jail unless he paid what was due. We granted the petition for a writ of certiorari to review this holding of the trial court.

The facts of the case, developed at several circuit court hearings, are undisputed. The petitioner, Emerson Marcellus Elzey, was divorced from Charlene Wroten Elzey on February 10, 1975, and the decree incorporated a settlement agreement under which the petitioner agreed to pay Charlene $125.00 per week for support. At the time, the

petitioner was in business as a plumber, with a few men working for him. The monthly support payments were made until October 1976, when the petitioner advised his former wife that he was retiring and would be financially unable to continue the payments. On November 5, 1976, Charlene Elzey filed a motion in the Circuit Court for Dorchester County to hold the petitioner in contempt because of the cessation of the monthly payments. Hearings on this motion were held in the circuit court in December 1976 and January and February 1977; the petitioner was held in contempt and was sentenced to serve ninety days in jail or until he purged himself by paying the arrearage; and he served the ninety-day jail term.

Later in 1977, Charlene Elzey filed another motion to hold Mr. Elzey in contempt for failure to pay the monthly support and arrearage, and a hearing on this motion was held on July 29, 1977. At the hearing, the petitioner testified that after his divorce, his plumbing business "dropped off," that he sold the business to one of the men who worked for him for $1,245.00, that under the contract of sale this sum was to be paid in installments, but that the petitioner had not yet received any payments under the contract of sale. The petitioner further testified that his only source of income was his social security, and that his only assets consisted of a mobile home in which his mother lived and a 1971 pickup truck. In addition, Mr. Elzey stated that until six weeks previously, he had been doing some part-time plumbing work, although the amount he had earned "wasn't very much." He testified that, at the time of the hearing, he was unable to work, that his present health was not good, and that he was being treated by a doctor for a "back ailment."

Following the July 1977 hearing, the plaintiff, Charlene Elzey, moved that, in lieu of incarceration, the court issue a writ of fieri facias upon the decree ordering the petitioner to pay the arrearage, in order that petitioner's truck and mobile home could be seized and sold. The court granted the motion, and the sheriff seized both of these assets.

A third motion to hold Marcellus Elzey in contempt was filed by his former wife Charlene on May 15, 1979, and a hearing in the circuit court was held on August 9, 1979. Charlene Elzey testified that the petitioner had made timely monthly payments in the full amount through October 1976, when he sent her a note stating that he was retiring. Since that time, she had received a total of only $125.00 from the petitioner plus the amount she had received from the court resulting from the sale of the mobile home and truck.

The petitioner's testimony at the August 1979 hearing largely covered the same ground as his testimony two years earlier. He amplified the previous testimony concerning his retirement decision, stating that at his age, he "wasn't able to get out and do the work that I had done years before," that he could not make enough money to pay his overhead such as the telephone bills, electric bills, fuel bills, upkeep on the trucks, etc., that he "was going behind every month," and that he "could not see any other way out." He stated that some of the business creditors have still not been paid. With regard to his health, the petitioner testified that he had arthritis and "trouble with my back," that he cannot "stoop or squat," and that, while he could walk, he could not do very much work. He also indicated that since the last hearing, he had been diagnosed as having high blood pressure.

The petitioner also testified that the only property he owned was his clothing, and that he lived with his present wife in a house belonging to her. Petitioner stated that his primary source of income was his social security payment of $441.00 per month, and that he needed all of this for groceries, utilities and other living expenses. Petitioner testified that his only other income was from occasional part-time plumbing work which he did for his son who operated a plumbing business. According to the petitioner, he would only work for his son "a couple hours" at a time, for which he would be paid $10.00 per hour. He stated that his son would ask him to work if there was an emergency or his son was busy, that some weeks he would not work at all, that he only performed minor plumbing jobs and could not do

"big" jobs, and that in the past month he had only worked two or three hours per day on about four different days. The petitioner testified that in 1979, he had earned only $180.00 from the part-time plumbing work, and that in 1978, his annual earnings from this source did not exceed $300.00. The petitioner's son testified and confirmed petitioner's account of the part-time plumbing work. The petitioner's son stated that he could not give his father more work "because he is older and plumbing work is hard; he couldn't do it."

At the conclusion of the hearing, the circuit court found that the petitioner had been able to pay his former wife $125.00 weekly when he originally made the agreement in 1975, but that "the circumstances change[d]," and that since his retirement, the petitioner has been financially unable to pay. However, the court made no finding that the petitioner's retirement was for the purpose of escaping his obligations under the divorce decree. Rather, the circuit court, in its oral opinion, found that the petitioner had decided to retire because he had "reached a certain age" and "most people retire at [that] age." The court held that because the petitioner's financial inability resulted from his own decision to retire, this case fell outside of the principle that one may not be imprisoned in a civil contempt case for failing to make support payments if one has neither the assets nor the ability to pay. The circuit judge concluded that he was "forced to find you [the petitioner] in contempt" and that "I have to send you to jail."

The petitioner, Elzey, was sentenced to the county jail for 120 days, or until he purged himself by paying the entire arrearage of $9,275.00. Mr. Elzey immediately filed an order of appeal, and the circuit court released him on personal recognizance pending appeal. The Court of Special Appeals affirmed in an unreported opinion, and we granted Mr. Elzey's petition for a writ of certiorari. We shall reverse.

Under the test set forth in our opinions, the circuit court proceedings in this case were clearly *civil* contempt and not criminal contempt proceedings. *Williams and Fulwood v. Director,* 276 Md. 272, 313, 347 A.2d 179 (1975), *cert. denied,*

425 U.S. 976, 96 S.Ct. 2178, 48 L.Ed.2d 801 (1976); *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867, 69 A.L.R.3d 483 (1973); *McDaniel v. McDaniel,* 256 Md. 684, 687-690, 262 A.2d 52 (1970); *Winter v. Crowley,* 245 Md. 313, 316-317, 226 A.2d 304 (1967). In all civil contempt proceedings, any order imposing a penalty upon the defendant must contain a purging provision with which the defendant has the ability to comply. *State v. Roll and Scholl, supra,* 267 Md. at 728; *McDaniel v. McDaniel, supra,* 256 Md. at 689-690, 692; *Johnson v. Johnson,* 241 Md. 416, 419-420, 216 A.2d 914 (1966). The "choice" must be the defendant's "as to whether [he can] comply." *Williams and Fulwood v. Director, supra,* 276 Md. at 313.

Consequently, with regard to civil contempt proceedings based upon the defendant's failure to comply with a decree ordering support payments, "imprisonment may be avoided by showing that one has neither the money nor the ability to pay." *Soldano v. Soldano,* 258 Md. 145, 146, 265 A.2d 263 (1970). Moreover, the issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his *present* ability to pay. As stated in *Johnson v. Johnson, supra,* 241 Md. at 419-420:

> "If the father was unable to meet his obligation because he had neither a sufficient estate nor the *then* ability to pay, as the record seems to indicate, the court was not justified in incarcerating him. * * * Until he was given an opportunity to show that he had neither the estate nor the ability to pay his obligation and failed to make such a showing, he should not have been incarcerated. The purpose of imprisonment for contempt is to compel compliance with a court order but where the person alleged to be in contempt can establish a valid defense, such as the unintentional inability to obey the order, imprisonment is not proper." (Emphasis supplied).

*See McDaniel v. McDaniel, supra,* 256 Md. at 692-693; *Speckler v. Speckler,* 256 Md. 635, 637, 261 A.2d 466 (1970);

*Schwartzman v. Schwartzman,* 204 Md. 125, 135, 102 A.2d 810 (1954); *Oles Envelope Corp. v. Oles,* 193 Md. 79, 92, 65 A.2d 899 (1949); *Dickey v. Dickey,* 154 Md. 675, 681, 141 A. 387, 58 A.L.R. 634 (1928). *See also Chase v. Chase,* 287 Md. 472, 474, 484-486, 413 A.2d 208, 209, 214-215 (1980) (dissenting opinion).

In the case at bar the trial judge found that the petitioner Elzey had become unable to pay the arrearage as well as the continuing weekly support payments. Moreover, this finding was compelled by the extensive and uncontradicted evidence at the hearings. Therefore, under the principles set forth in the above-cited cases, it would appear that the petitioner should not have been sentenced to jail.

Nevertheless, the trial court believed that a jail sentence in this case was required because it was the petitioner's own voluntary act of retirement which placed him in his present position of financial inability. However, the trial court did not find that the petitioner's decision to retire was in bad faith or was motivated by a desire to defraud his former wife or to deprive her of support. *Cf. Oles Envelope Corp. v. Oles, supra,* 193 Md. at 88. Instead, the trial court found that the petitioner decided to retire because he had reached the age at which most people retire. Finally, even if the trial court had found that the petitioner's financial inability had been due to bad faith on his part, and if such a finding had been supported by the evidence, it would not have justified a *civil* contempt jail sentence. This was explained by Judge Digges for the Court in *State v. Roll and Scholl, supra,* 267 Md. at 730:

> "Situations may arise where at a hearing held pursuant to an order to show cause in what properly began as a civil contempt, facts are presented which indicate that the alleged contemnor cannot comply with the order of the court that directed him to perform an act for the benefit and advantage of another party to the suit. If this inability to comply was caused by a deliberate effort or a wilful act of

commission or omission by the alleged contemnor committed with the knowledge that it would frustrate the order of the court, the civil contempt proceeding should be terminated and new proceedings may be instituted which can result in a finding of criminal contempt. *Cf. Tyler v. Baltimore County,* 256 Md. 64, 71, 259 A.2d 307 (1969).

In the present case, the trial court made no finding that the petitioner was, at the time of the hearing, able to work enough to pay his former wife $125.00 weekly, or to pay the $9,275.00 arrearage. Furthermore, the evidence would not have supported such a finding. In fact, the trial court found, and the evidence showed, that the petitioner was financially unable to pay the weekly support payments and the arrearage. The order sentencing the petitioner to jail did not contain a purging provision with which the petitioner could have complied had he chosen to do so. *Cf. McDaniel v. McDaniel, supra,* 256 Md. at 686-687, 694-695. Instead, the petitioner could only have purged himself by paying the entire arrearage of $9,275.00. As he was financially unable to comply with this purging provision, the jail sentence was improper.

> *Judgment of the Court of Special Appeals reversed, and case remanded to that court with directions to reverse the judgment of the Circuit Court for Dorchester County.*
> *Respondent to pay costs.*