519 A.2d 1323

**Rita ROEDER, Trustee,**

**v.**

**Samuel J. AUXIER, et al.**

**No. 628, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 19, 1987.

Certiorari Granted June 9, 1987.

Elizabeth H. Farquhar, Silver Spring, for appellant.

Robert P. Scanlon (Quinn, Scanlin & Maiberger, on the brief) Rockville, for appellees.

Argued before MOYLAN, BLOOM and ROBERT M. BELL, JJ.

BLOOM, Judge.

The Circuit Court for Montgomery County, upon the complaint of appellee Wellcraft Marine Corporation, declared a deed of trust from Wellcraft's debtors, Samuel J. and Mary Auxier, to appellant Rita Roeder, Trustee for the benefit of Helen Dismer Auxier, invalid as a fraud on the grantor's creditors. We will reverse that decision.

Samuel J. Auxier and Mary R. Auxier were owners of Cap'n Stan's Boat Center. That company entered into a floor plan arrangement whereby it purchased inventory from Wellcraft on credit and paid off the floor plan debt as the inventory was sold. As is customary with small business financing, Samuel and Mary Auxier individually guaranteed payment for the floor planned inventory. The entire arrangement was financed with recourse through Finance America, which subsequently assigned its claims against Samuel and Mary Auxier to Wellcraft.

In May 1981, Cap'n Stan's sank in a sea of red ink. Wellcraft sued Sam and Mary Auxier on their personal guarantees and obtained a judgment against them in the amount of $172,833.22 on 29 September 1981. On 13 March 1985, Wellcraft attempted to execute on the judgment, instructing the sheriff to seize and sell the judgment debtors' property located at 3401 and 3405 Hewitt Avenue. A sheriff's sale was scheduled for 26 August 1985.

The sheriff's sale was forestalled by the institution of proceedings to foreclose on a deed of trust of the Hewitt

Avenue property from Samuel and Mary Auxier to Rita Roeder, Trustee. This facially valid deed of trust, dated 2 January 1979 and recorded on 17 April 1980, purported to secure a note for a loan of $100,000 to Samuel Auxier from his sister-in-law, Helen Dismer Auxier. At the foreclosure sale, Helen purchased the property, which was subject to a prior lien of $32,079, for $100,000. Because no interest or principal had ever been paid on the note from Samuel and Mary to Helen, there remained a deficiency of $87,490.20 on the note after the foreclosure sale. Wellcraft filed exceptions to the Trustee's report of sale.

At a hearing on its exceptions, Wellcraft called only one witness, Samuel J. Auxier, who was recognized by the court as a hostile witness. Mr. Auxier testified, and produced documentary evidence to support his testimony, that in March 1978, in order to lend Samuel money for his business ventures, Helen had refinanced four parcels of improved real estate and deposited $137,490.26 of the proceeds into the checking account of Dismer-Auxier Company, a real estate management firm owned by her and managed by Samuel. Within a brief span of time thereafter, and with Helen's approval, Samuel drew three checks, totalling $100,-000, on the Dismer-Auxier Company account, payable to himself, which he then endorsed over to Cap'n Stan's Boat Center and another of Samuel's business ventures. All three checks were identified in the company's cash disbursements journal as loans to Samuel, and they were posted to the general ledger in an account entitled "Notes Payable-Helen Auxier" as money owing to her.

Having elicited the foregoing testimony from Samuel, Wellcraft proceeded to cast doubt upon his credibility by showing that he had failed to list the deed of trust on his personal financial statement for the year 1979. Moreover, Samuel's testimony indicated that he had misstated his assets at a 1982 deposition taken by Wellcraft in aid of its efforts to execute on its judgment against him. Wellcraft questioned Samuel about other checks payable to himself he had drawn on the Dismer-Auxier Company account that

were not included in the deed of trust note, thereby implying that in response to Wellcraft's claim of fraud Samuel had merely selected three checks totalling $100,000 to support his testimony about a loan. Samuel offered an explanation to the effect that the other checks were loans from some other "account in the ledger." The ledgers in evidence, however, show those checks as well as the three totalling $100,000 listed on the same ledger page.

Wellcraft rested its case at the conclusion of Samuel's testimony. The Trustee then called Samuel as her witness to try to rehabilitate his credibility. The only other witness was Helen, whose testimony concerning the transaction was substantially identical to Samuel's.

The transcript of the proceeding below clearly reflects that the court was singularly concerned with the consideration allegedly supporting the deed of trust. The court repeatedly asked for some documentation contemporaneous with the issuance of the Dismer-Auxier checks which would link the checks to the deed of trust. In the absence of additional written evidence the court viewed the matter as resting solely upon its determination of the credibility of Sam Auxier. Having found Samuel totally devoid of credibility, the court stated that it found by clear and convincing evidence that the conveyance was fraudulent.

We must, of course, give due regard to the court's assessment of credibility; nevertheless, the evidence is clearly insufficient to support the court's finding.

Because Wellcraft produced Samuel as its witness, and adduced no evidence to contradict his testimony that the deed of trust was supported by the three Dismer-Auxier checks, we are tempted to resolve this appeal on the basis of the oft stated propositions that a party vouches for the credibility of its own witnesses and that a party is bound by the uncontradicted statements of its own witness. *See Coffey v. Derby Steel Co.*, 291 Md. 241, 434 A.2d 564 (1981). As a rule of evidence, however, these propositions are of questionable validity and obscure origin. Professor Wig-

more explains that they are perhaps vestiges of the primitive mode of trial by "oath-helpers," by whose mere oath, taken by the prescribed number of persons and in the proper form, the issue in the case was decided. IIIA J. Wigmore, *Wigmore on Evidence* §§ 896–899 (J. Chadbourn ed. 1970). Whatever lip service is still paid to these propositions, it is clear that a court need not blindly accept even uncontradicted testimony that it regards as improbable. *Williams v. Wheeler*, 252 Md. 75, 80, 249 A.2d 104 (1969). Moreover, any testimony may be rejected if there are reasonable grounds for concluding that it is erroneous. *Proctor Electric Co. v. Zink*, 217 Md. 22, 33–34, 141 A.2d 721 (1958). The trial court found Samuel lacking in credibility; regardless of who called him as a witness, the court was not compelled to accept his testimony as true.

Even though Samuel's testimony was not binding on Wellcraft, the judgment of the circuit court must be reversed as clearly erroneous. Md. Rule 1086. Before the court was (1) a facially valid deed of trust and note for $100,000; (2) three checks totalling $100,000, issued nine months prior to the deed of trust, and identified on the books of the disbursing company as a loan from the grantee of the deed of trust to the grantor; (3) the testimony of the two parties to the transaction to the effect that the checks formed the consideration for the deed of trust; and (4) testimony to the effect that the grantor did not oppose the foreclosure and remained on very friendly terms with the grantee, who had no intention of evicting him from the property. The totality of that evidence does not amount to clear and convincing evidence of fraud or lack of consideration.

Appellee concedes that an antecedent debt can form valid consideration for a deed of trust, *cf. Drury v. State Capital Bank*, 163 Md. 84, 90, 161 A. 176 (1932); therefore, the time differential between the issuance of the checks and the execution of the deed is not, in itself, evidence of lack of consideration or fraud. Moreover, absent bankruptcy, a debtor may legally favor one creditor over another, even a

close relative. *Berger v. Hi-Gear Tire & Auto Supply, Inc.,* 257 Md. 470, 475, 263 A.2d 507 (1970). Neither Samuel's preference of his sister-in-law by the execution of a deed of trust, nor testimony concerning his desire to expedite and conclude the foreclosure constitute clear and convincing evidence of fraud. The only evidence before the court with respect to consideration for the deed of trust was the affirmative testimony of both Samuel and Helen that the deed was supported by adequate consideration in the form of an antecedent debt of $100,000. Discrediting that testimony does not constitute clear and convincing evidence of a lack of consideration or fraud.

 A party with the burden to prove an alleged fact may not merely call a hostile or adverse witness, elicit testimony from him to the effect that the alleged fact does not exist, discredit him, and then rely on the trier of fact to conclude, based on the witness's lack of credibility, that the opposite of his statements must be true. *Pariso v. Towse,* 45 F.2d 962, 964 (2d Cir.1930) (L. Hand, J.); *Kirby v. Delaware & H. Canal Co.,* 20 App.Div. 473, 46 N.Y.S. 777, 780 (1897). "Facts cannot be established by not believing witnesses who deny them." *Beers v. Isaac Prouty & Co.,* 203 Mass. 254, 257, 89 N.E. 557 (1909). The finder of fact, therefore, is not free to infer from rejected testimony that its converse is true. *E.g., Novak v. Anderson,* 178 Conn. 506, 423 A.2d 147, 148 (1979) (per curiam); *Moulton v. Moulton,* 178 Minn. 568, 227 N.W. 896, 897 (1929); *Merriman v. Johnson,* 496 S.W.2d 326, 331 (Mo.App.1973). *Cf. Hayette v. State,* 199 Md. 140, 145, 85 A.2d 790 (1952) (general rule inapplicable to inference of scienter).

 Upon concluding that Samuel Auxier (and presumably Helen Auxier) lacked credibility, the court could not infer from their testimony to the contrary that the checks were not linked to the deed of trust. The court was limited to rejecting their testimony and deciding the case on the remaining evidence, which, as discussed *supra,* did not constitute clear and convincing evidence of fraud and could

not support a finding of a lack of consideration. The facially valid deed of trust remained unimpeached.

Appellee maintains that the presence of several indicia of fraud shifted the burden to the appellant to prove the bona fides of the transaction. Although it is true that circumstances may warrant the court to require the proponent of a transaction to provide an explanation thereof, *e.g., Berger v. Hi-Gear Tire & Auto Supply, Inc., supra,* the court below did not discuss "shifting the burden," and we do not find such circumstances present in this appeal. The *Berger* Court quoted several indicia of fraud which may lead a court to require an explanation from the transaction's proponent. The list included:

1) insolvency or indebtedness of the transferor;

2) lack of consideration;

3) relationship between the transferor and transferee;

4) the pendency or threat of litigation;

5) secrecy or concealment;

6) departure from the usual means of business;

7) transfer of the debtor's entire estate;

8) reservation of benefit to the transferor;

9) retention by the debtor of possession of the property.

*Berger v. Hi-Gear Tire & Auto Supply, Inc., supra,* 257 Md. at 476, 263 A.2d 507.

No evidence was presented to show that Samuel and Mary were insolvent when the deed of trust was created on 2 January 1979. Although they were guarantors of Cap'n Stan's floor plan, as guarantors they were not primarily liable for inventory payments. There was no evidence presented to indicate that Cap'n Stan's had not made all required payments to Wellcraft as of 2 January 1979. As discussed, *supra,* there was insufficient evidence to warrant a finding of lack of consideration. Wellcraft presented no evidence to indicate that on 2 January 1979 litigation was pending or threatened against Samuel and Mary. With respect to concealment, it is true that Samuel Auxier failed

to list the deed of trust on his 1979 personal financial statement; however, there was no evidence offered which would tend to implicate Helen, the one for whose benefit the deed was drafted, in the concealment. Wellcraft produced no evidence to indicate that this transaction was a departure from the usual course of business between Helen and Samuel. Helen did testify that on two or three occasions in 1972 or 1973 she loaned money to Samuel and received promissory notes (whether contemporaneously with the loan or not was not conclusively shown); but we do not find testimony concerning two or three transactions occurring five years before the events giving rise to this action as indicative that any usual course of business existed between Helen and Samuel. The deed transaction did not involve a transfer of the debtors' entire estate and the debtors reserved no benefit to themselves. Finally, as to retention of the property by the debtors, in the context of this case we find this factor inconsequential. It is not surprising that Helen so far has declined to eject her brother-in-law and his wife from their home. The only factor clearly proven is that the transferor and transferee were related. Under the circumstances of this case, this lone indicium is not sufficient to place any burden of production on the appellant.

There is in this, as in other cases, a presumption of innocence and good faith. *Berger v. Hi-Gear Tire & Auto Supply, Inc.*, 257 Md. at 476, 263 A.2d 507. Although a state of facts may be shown which would negate that presumption, the critical issue is knowledge of or participation of the *grantee* in the fraud. *Id.* Even if it could be said that the evidence, when viewed in a light most favorable to the appellee, may tend to show fraudulent purpose and/or conduct on the part of the grantor Samuel Auxier, there is absolutely nothing in the evidence that would give rise to a reasonable inference that the grantee, Helen Auxier, participated in or had knowledge of such fraud. Indeed, the entire thrust of the evidence is that Helen entrusted the management of her business affairs to her

brother-in-law, who borrowed Helen's money and undertook to give her a preference over his other creditors with a deed of trust on his property.

In conclusion, there was insufficient evidence for the court to find that the deed of trust was a fraudulent conveyance. Wellcraft at all times had the burden to prove by clear and convincing evidence the conveyance was fraudulent; it did not meet its burden. Accordingly, we find the judgment of the circuit court was clearly erroneous.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE WELLCRAFT MARINE CORPORATION