652 A.2d 1132

**Susan M. LYNCH**

v.

**Robert D. LYNCH.**

**No. 273 Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Feb. 1, 1995.

Geraldine Kenney Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Angela M. Eaves, Asst. Atty. Gen., and Kathy F. Crosby, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Submitted before WILNER, C.J., and DAVIS, and MURPHY, JJ.

MURPHY, Judge.

In the Circuit Court for Montgomery County, Susan M. Lynch,[1] appellant, was held in civil contempt and sent to jail for nonpayment of child support. She presents three questions for our review:

1. Is this appeal moot because appellant has served the sentence imposed?

2. Did the trial judge err in finding appellant in contempt?

3. Did the trial judge err in imposing a purging provision of five hundred dollars?

Our answer to the first and second questions is "no." To the third question, however, our answer is "yes." The evidence was insufficient to support the trial judge's conclusion that appellant was able to comply with the purging provision at the time when the coercive imprisonment began.

## FACTS

Appellant and Robert D. Lynch, appellee, were divorced in 1987. At that time, appellant was awarded custody of the parties' two minor children. On September 12, 1991, however, the circuit court

ORDERED, that the residential care, custody and control of the minor children of the parties be placed with ... Robert D. Lynch, reserving unto ... Susan M. Lynch, reasonable rights of visitation, pending further Order of Court, and it is further

ORDERED, that commencing and accounting from September 15, 1990, (appellant) shall pay unto (appellee) as and for support and maintenance of the minor children of the parties, the sum of $150.00 per month, due and payable at a rate of $75.00 on the 15th and $75.00 on the 1st of each month hereafter, pending further Order of Court, and it is further

---

1. Appellant has resumed use of her maiden name, Susan McGary. This appeal, however, was docketed under her married name.

ORDERED, that all payments of support be made through the Child Support Enforcement Division of the Circuit Court for Montgomery County, Maryland, 50 Courthouse Square, 4th Floor, Rockville, Maryland 20850.

Appellant immediately fell behind on her support obligation. The record shows that on one occasion she agreed to cooperate in the Support Division's efforts to attach her unemployment benefits, and on another occasion she agreed to turn over whatever cash she would receive from her federal government pension. No funds were ever received from either of these sources. The Support Division initiated contempt proceedings. On March 4, 1994, with both sides represented by counsel,[2] a hearing was finally held.

Appellant was the only person who testified at the hearing. She told the court that she was living in a house that had been owned by her deceased mother, whose will left that house to appellant's children and their parental guardian. According to appellant, the house was tied up in probate proceedings that she did not understand. Appellant further testified as follows:

Q. But at the moment you don't have legal title to the house?

A. No.

\* \* \* \* \* \*

Q. Okay. Are you paying any rent?

A. No.

Q. Okay. Are you receiving any kind of money at all right now?

A. No. There's a mortgage and everything on the house.

Q. You are not paying the mortgage?

A. I have to pay the taxes. I haven't paid the mortgage yet.

---

2. Appellant was facing a sentence of incarceration and was therefore entitled to appointed counsel. *Rutherford v. Rutherford,* 296 Md. 347, 363, 464 A.2d 228 (1983). She was represented by an Assistant Public Defender. The Support Enforcement Division was represented by an Assistant State's Attorney for Montgomery County.

Q. All right.

A. I do have a tenant that's moving in Wednesday.

Q. Has he moved in yet?

A. Well, he's moved in. He gets paid this Wednesday.

Q. Okay. How long has he been living there?

A. He just got there last Monday.

Q. Okay. How much is he going to be paying you for the—

A. Sixty a week.

Q. Has he paid you anything so far?

A. No, not yet.

Q. How are you eating?

A. I got this for verification. This is Mana, and what you do is you call in to the Salvation Army and you get a referral, and what they do is they give you an amount of food. When I first started going to Mana, I had the two children, so, of course, the letter does state for two children and two adults.

\*       \*       \*       \*       \*       \*

Q. Do you have a car?

A. No.

Q. How did you get here today?

A. Public transportation.

Q. Okay. Do you have any kind of bank accounts?

A. No.

Q. Do you have any cash or any other valuables with you today?

A. I have a 20–dollar bill that I was going to pay, but I figured I was going to jail, so I thought maybe I should keep that in my pocket for jail.

Q. Do you receive any kind of public assistance, social security or anything like that?

A. No.

Q. Any kind of workman's compensation?

A. No.

Q. How long since you have been working?

A. '91, August '91.

Q. What kind of work was that?

A. That was a job for the federal government, NIH. My mother got very sick and because of personal problems at home, et cetera, I quit.

Q. What attempts have you made to find employment recently?

A. Well, I've done miscellaneous, like yard work or—let's see, I've delivered flowers one day, where you get a whole four dollars for walking three hours one day.

Q. Have you got applications out anyplace?

A. Yes.

\* \* \* \* \* \*

Q. Why don't you have a phone?

A. It was turned off a couple of years ago, back in 1992, I think.

\* \* \* \* \* \*

THE COURT: Ma'am, what kind of work did you have with the government?

THE WITNESS: It was receptionist type, personal assistant.

THE COURT: How much did you get paid?

THE WITNESS: That was $11.49 an hour when I quit.

\* \* \* \* \* \*

THE COURT: You left that job in 1991?

THE WITNESS: Yes.

THE COURT: Because your mother was sick?

THE WITNESS: Yes.

THE COURT: When did she die?

THE WITNESS: November 1992.

\* \* \* \* \* \*

The prosecutor made the following closing argument:

... I think you are looking at somewhat of a classic voluntary impoverishment case. She doesn't work, she obviously doesn't have to work. She can meet her needs by some other way. I can't get to any of her assets because she doesn't legally own anything. In terms of this piece of property, it would be nice if we had a judgment, we could go after the property, but she doesn't own the property and she won't do anything to get the estate moving along ... I think it is one big game. In light of the payment history, I think that is pretty obvious.

The circuit court agreed, stating to appellant:

You know, you are free to live the life that you do, and I am not saying it is a great life ... but you have got support payments here, you have got to face them, you have got to deal with that. That is the problem I have, I have got to make you understand how important this is. You can't live the way you live. You can't do it ... You have got to go out and make some money ... obviously, you are a pretty skillful person and you have got some ability ...

I am going to decide that you are in arrears $5,680. Your case has been continued at least eight times for you to start paying. You did not show up once. The last time you paid was November 1992, over a year ago. You are lucky you don't have to pay any rent. All you have to do is eat and ... you have got a discretionary lifestyle if there ever was one. Even though it is not the best lifestyle, it is one that is discretionary and in the process of it you don't pay support that you have the ability to pay.

The circuit court entered an order providing:

1. That (appellant) is in contempt of Court for her willful failure to pay child support;

2. That a judgment is entered in favor of (appellee) and against (appellant) for $5,680.00;

3. That (appellant) be confined to the Montgomery County Department of Correction and Rehabilitation for twenty (20) days;

4. That (appellant) may purge her contempt by paying $500.00;

5. That this matter is set for further Review on July 22, 1994, at 9:00 A.M.

Appellant's Motion for Reconsideration was heard and denied on March 16, 1994. At that hearing, the circuit court stated, "I don't think she did have $500 in her pocket ... but I think because of the lifestyle that she leads, has it available to her to purge herself."

## *DISCUSSION*

### I.

■■■ Appellee argues that we should hold that the issues are moot because appellant has already served the sentence that was imposed. We disagree. In *Jones v. State*, 61 Md.App. 94, 484 A.2d 1050 (1984), even though the appellant had already served the sentence imposed, we held that the case was not moot because she would be entitled to exoneration if the trial court's finding was reversed. *Id.* at 96, 484 A.2d 1050. Moreover, a case that involves "frequently recurring issues of public importance ... ought to be decided." *Rutherford v. Rutherford*, 296 Md. 347, 352, 464 A.2d 228 (1983).

It is true that appellant is out of jail at the present time. We are not persuaded, however, that her case is necessarily moot. Her support obligation continues to be the subject of further review. She remains in arrears on that obligation. A recurrence of this action is likely. We shall answer the second and third questions.

### II.

■■■ To determine whether appellant was in contempt of the September 12, 1991 order, the circuit court properly focused on the entire period of time between the date on which the order was entered and the date on which the hearing was held. The evidence showed that appellant was

earning $11.49 per hour when she left her job in August of 1992. Her mother died in November, 1992. As of the March 4, 1994 hearing, appellant had not yet obtained other steady employment. Appellant's hearing had already been postponed eight times to give her an opportunity to make payments. That appellant chose to be supported by others does not prove that she lacked the ability to make child support payments. Voluntary impoverishment is simply not a valid defense to a contempt charge arising out of a parent's refusal to comply with his or her child support obligation. *Goldberger v. Goldberger*, 96 Md.App. 313, 326, 624 A.2d 1328 (1993).

■■ "The purpose of imprisonment for contempt is to compel compliance with a court order but where the person alleged to be in contempt can establish a valid defense, such as the unintentional inability to obey the order, imprisonment is not proper." *Johnson v. Johnson*, 241 Md. 416, 420, 216 A.2d 914 (1966). The "unintentional inability" defense is an affirmative defense to the charge of contempt. The alleged contemnor bears both the burden of production and the burden of persuasion on this issue. *Speckler v. Speckler*, 256 Md. 635, 637, 261 A.2d 466 (1970); *Elzey v. Elzey*, 291 Md. 369, 374, 435 A.2d 445 (1981).

■ Appellant was given the opportunity to present evidence in support of her affirmative defense. The circuit court "was free to accept that evidence which it believed and reject that which it did not." *Muir v. State*, 64 Md.App. 648, 654, 498 A.2d 666 (1985), *affd.* 308 Md. 208, 517 A.2d 1105 (1986). The rejection of testimony, of course, does not prove that the converse of that testimony is true. *Attorney Griev. Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174 (1990); *Roeder v. Auxier*, 70 Md.App. 50, 55, 519 A.2d 1323 (1987), *rev'd on other grounds, Wellcraft Marine Corp. v. Roeder*, 314 Md. 186, 550 A.2d 377 (1988).

■ Disbelief of appellant's "unintentional inability" testimony could not, of itself, prove that she was guilty of contempt. The trial judge was entitled, however, to accept certain portions of appellant's testimony and to reject other

portions. We are persuaded that the evidence presented in this case was sufficient to support the conclusion that appellant had committed a contempt of court.

## III.

There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt ...

However, the justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order ... This limitation accords with the doctrine that a court must exercise "[t]he least possible power adequate to the end proposed." *Anderson v. Dunn*, 6 Wheat. 204, 231, 5 L.Ed. 242 (1821); ...

*Shillitani v. United States*, 384 U.S. 364, 370–371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966).

Having correctly determined that appellant had committed a civil contempt, the trial judge was entitled to order that she be confined—for a determinate [3] or indeterminate period—until she complied with the purging provision. Because the purging provision must give the contemnor "the keys to the jail cell," the judge must be affirmatively persuaded that the contemnor has the ability to accomplish whatever it takes to avoid imprisonment.[4] It is an abuse of discretion to set a purging provision that the contemnor cannot satisfy.

---

**3.** A determinate sentence may be imposed as long as the order of commitment allows the contemnor to be released if compliance is accomplished prior to the end of the term. *McDaniel v. McDaniel*, 256 Md. 684, 690, 262 A.2d 52 (1970).

**4.** In *Speckler, supra,* the Court of Appeals stated "that one charged with contempt may avoid imprisonment by showing he has neither the money nor the ability to pay. *Id.* at 637, 261 A.2d 466. That statement, however, actually addresses the issue of who has the burden of persuasion on the "unintentional inability to obey" defense, rather than on the purging provision issue. We are persuaded that *Elzey* requires an affirmative finding that the contemnor is able to comply with the purging provision. 291 Md. at 376, 435 A.2d 445.

*Baltimore v. Baltimore,* 89 Md.App. 250, 254, 597 A.2d 1058 (1991).

The issue of whether the contemnor has the ability to comply with the purging provision differs in two respects from the issue of whether a contempt has been proven. First, the issue of what the purging provision should contain is much narrower than the issue of whether a contempt has been committed. When establishing the purging provision, the judge's focus must be confined to the period of time between the moment at which the contemnor is found in contempt and the moment at which the coercive imprisonment is to begin.[5] In this case, because the contempt order provided for immediate confinement, the judge's focus was narrowed to the circumstances that existed at that moment.

Second, although it is the person charged with contempt who has the burden of proving the "unintentional inability" defense, the person found to be in civil contempt cannot be assigned the burden of proving his or her inability to comply with the purging provision. *Fields v. Fields,* 74 Md.App. 628, 635, 539 A.2d 708 (1988), *Elzey v. Elzey,* 291 Md. 369, 376, 435 A.2d 445 (1981). In one respect, however, the trial judge's evaluation of evidence at the purging provision phase is identical to the evaluation of evidence at the guilt/innocence phase. An affirmative finding that the contemnor is presently able to comply with the purging provision cannot be based solely on the judge's disbelief of the contemnor's claim of inability to comply. *Clements, supra,* 319 Md. at 298, 572 A.2d 174; *Roeder, supra,* 70 Md.App. at 55, 519 A.2d 1323.

In this case, the finding that appellant had the present ability to comply with the purging provision of five hundred

---

5. When the evidence establishes that the contemnor needs time to comply with the purging provision, the coercive imprisonment must be deferred to the deadline for compliance. If, for example, it is established at a Monday hearing that the contemnor will be unable to pay any support until a paycheck arrives on Friday, the contempt order should provide for the contemnor's imprisonment at the close of business on Friday if the purging provision has not been complied with by that time.

dollars ($500) was based exclusively on the disbelief of her testimony that she was not able to pay any more than the twenty dollars ($20) she brought to court with her. The evidence was therefore insufficient to support the conclusion that appellant had the present ability to comply with the purging provision that was established. The establishment of a purging provision in the amount of five hundred dollars ($500) constituted an abuse of discretion.

If appellant had not already served the sentence imposed, we would remand for a modification of the purging provision. We shall instead reverse the purging provision only, and direct that any future civil contempt proceedings be consistent with this opinion.

**FINDING OF CONTEMPT AFFIRMED; PURGING PROVISION REVERSED; APPELLEE TO PAY THE COSTS.**