694 A.2d 101

Thomas E. OTT, III

V.

FREDERICK COUNTY DEPARTMENT
OF SOCIAL SERVICES

No. 47 Sept. Term, 1996.

Court of Appeals of Maryland.

May 22, 1997.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Angela M. Eaves, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued Before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

BELL, Chief Judge.

The petitioner, Thomas E. Ott, III, was found in civil contempt of court, by the Circuit Court for Frederick County, for failing to comply with the child support order to which he consented.[1] The court ordered the petitioner incarcerated for

---

1. The petitioner had been under court orders, to all of which he had consented, to pay $150 per week child support for his four children, since July 30, 1990. He had been cited for contempt for nonpayment on three earlier occasions. Faced with the threat of incarceration, on each of those occasions, he paid purge amounts ranging from $250 to $1500.

6 months, but provided that he could purge the contempt by paying $2000 in installments, as specified. A divided panel of the Court of Special Appeals, in an unreported opinion, affirmed the judgment of the circuit court. At the petitioner's request, this Court issued a writ of certiorari. Applying the recent case of *Lynch v. Lynch*, 342 Md. 509, 677 A.2d 584 (1996)[2], we shall hold that the circuit court erred both in its contempt finding and in the purge provision[3] it imposed.[4]

---

**2.** On December 10, 1996, the Court amended Maryland Rule 15–207, applicable to civil contempts, by adding a new section (e). Effective January 1,1997, that section provides:

(e) *Constructive Civil Contempt–Support Enforcement Action.*

(1) *Applicability.* This section applies to proceedings for constructive civil contempt based on an alleged failure to pay spousal or child support, including an award of emergency family maintenance under Code, Family Law Article, Title 4, Subtitle 5.

(2) *Petitioner's Burden of Proof.* Subject to subsection (3) of this section, the court may make a finding of contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing.

(3) *When a Finding of Contempt May Not be Made.* The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations as to each unpaid spousal or child support payment for which the alleged contemnor does not make the proof set forth in subsection (3)(A) of this section.

(4) *Order.* Upon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies (A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged. If the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments.

**3.** This Court has had the following to say about purge provisions:

In the case of civil contempt, the purpose of imprisonment of the contemnor is remedial. Therefore, because the purpose of the proceedings defines and limits the penalties that may be imposed before

The contempt hearing in this case took place on October 18, 1995. This was the fourth such hearing. By then, the parties agreed, the petitioner had accumulated a child support arrearage of $24,799.43. Therefore, after greeting the court, the petitioner's counsel commented:

... We're here on a contempt motion filed by the State. Your Honor with regard to that motion, Mr. Ott is willing to stipulate to the contempt. I don't have the details of the last payment, and the amount owed, but I'll let the State put that in. Leaving us solely then with the issue to be determined that is the purge amount and the amount of penalty.

the contemnor may be imprisoned, he or she must have an opportunity to purge the contempt, that is to say, he or she must have the keys to the prison in his or her pocket. *In re Nevitt,* 117 Fed. 448, 459 (8th Cir.1902). Thus, any sentence of imprisonment entered following a finding of civil contempt must provide for purging. *Rutherford v. Rutherford,* 296 Md. 347, 355, 464 A.2d 228, 232–33 (1983); *[State v.] Roll & Scholl,* 267 Md. [714,] 728, 298 A.2d [867,] 876 [ (1973) ]; *Elzey v. Elzey,* 291 Md. 369, 374–75, 435 A.2d 445, 447 (1981).

A "provision for purging" or the "opportunity for purging" relates to affording the defendant "the chance to rid him or herself of guilt and thus clear himself of the charge." *Herd v. State,* 37 Md.App. 362, 365, 377 A.2d 574, 576 (1977).

**4.** In his petition for certiorari, the petitioner posed three issues. In addition to the one we will address, the application of the standard reiterated in *Lynch v. Lynch,* 342 Md. 509, 677 A.2d 584 (1996) to the facts *sub judice,* the petitioner asked us to decide:

1. Whether the rule of *Hersch v. State,* 317 Md. 200, 562 A.2d 1254 (1989), should apply to civil contempt proceedings and whether the lower court erred in accepting defense counsel's admission of contempt of court on behalf of petitioner where the charge and its consequences were not explained to petitioner, he did not personally address the court, there was nothing in the record evidencing his knowledge of his due process right to contest the charge, and the record does not reveal an adequate factual basis for a finding of civil contempt.

2. Whether an alleged civil contemnor has a Fifth Amendment privilege to refuse to testify and whether the circuit court erred in ordering petitioner to testify as a witness for the plaintiff and in threatening to hold him in contempt and to incarcerate him if he refused.

When counsel for the respondent, Frederick County Department of Social Services, expressed a preference for testimony and counsel for the petitioner offered to withdraw the stipulation, the court informed the parties:

I'll tell you what we're going to do is this, let me be clear, I don't think we need testimony with the stipulation, and let me tell you where I am, contempt has been established, now I have a decision and that is what to do about the contempt. Now if I choose to use incarceration, then my next step is a purge bond. If it's a purge bond, get the old Baltimore, has to be the individual has the keys to his own freedom.

Thereafter, counsel for the respondent proffered, and the court found sufficient, the factual basis for the stipulation: that, pursuant to the relevant court order, the petitioner was required to pay $150 per week; that no payments had been made since December 7, 1994, over ten months before the hearing; and that the arrearage was, indeed, $24,799.43.

Called, over his objection, as the respondent's witness, "for the purpose of establishing what an appropriate purge provision would be in this case," the petitioner testified that he had been unemployed for only three months of the period covered by the contempt motion, the time when his father's business had been closed and his father recently had had by-pass surgery. As of the hearing date, he added, he had been working for two weeks for his father, who had rehired him, and he expected to receive his first paycheck the week following the hearing. The petitioner testified further that he had no driver's license, depended on his father for transportation, and walked to court that day. Moreover, he denied owning credit cards or bank accounts or having any money. Although acknowledging that he does, at times, give his sister money to hold for him when he gets paid, the petitioner denied that his sister was holding any money for him at that time.

As indicated, the court imposed a 6 month sentence and provided that the petitioner could avoid incarceration by paying $2000, the purge amount. Specifically, to purge, the petitioner was required to pay $800 that day and $600 each on

the following November 3, and December 1. Responding to the petitioner's argument that the evidence did not demonstrate an ability to pay, the court observed:

Alright. Mr. Harris your points are well taken in terms of the evidence. What I heard was that Mr. Ott had worked for two weeks, actually I think there were 56 hours, 24 and 32, at $15.00 an hour. Now I know that his testimony is that he gets paid next week, and I'm very much aware [of] the teaching of *Lynch v. Lynch*, as far as how I can consider these matters. But I also am clear that the evidence is that Mr. Ott is working in a family business, his father, it was his father's business, probably still is, but his father wasn't there because he was having triple bypass surgery, his brother's been running the business, I don't know where the sister fits into it, but I know Mr. Ott, she sort of holds the money for Mr. Ott from time to time, as the banker. Now I'm not obligated to leave my common sense at the door, and I didn't. I know that Mr. Ott can reach the money just as surely as I can write a check. Mr. Ott just chose to make it unavailable to him because he knew he was coming here today where he knew he was going to have to deal with this matter. Mr. Ott you can shake your head, but I want you to get to know me because we may spend some quality time together, you understand?

In *Lynch*, the respondent was ordered to pay monthly child support for her two minor children, who were in the custody of their father. When the order was passed, the respondent was working for the federal Government, making a sufficient amount to comply. She failed timely to make the payments ordered and an arrearage of more than $5000 accumulated. Contempt proceedings were initiated against her. Testifying at the hearing on the contempt petition, she acknowledged that she had quit her job after about a year to care for her mother and only sporadically sought other employment after she died. The respondent maintained that, other than $20 in her possession, she had no assets, did not receive public assistance, social security, workers' compensation, or any oth-

er like benefits. She lived rent free in her mother's house, she said, and received free food from a charitable organization.

The court held the respondent in contempt, sentencing her to 20 days in the detention center, unless she purged the contempt by paying $500. It determined that the respondent could purge the contempt because of the "discretionary life style" that she led, *i.e.,* she received the necessities from people with no obligation to supply them and, but for them, she would have been required to supply them for herself.

Agreeing with the Court of Special Appeals, which reversed the purge provision, *Lynch v. Lynch,* 103 Md.App. 71, 82–83, 652 A.2d 1132, 1138 (1995), this Court repeated what had by then been well-settled:

> Before the defendant may be imprisoned, of course, the defendant must have been held in contempt.... That requires proof, by the petitioner, that the defendant acted in contradiction of the applicable court order. In the case of a court order prescribing or prohibiting, a specified course of conduct, the petitioner must establish that the defendant did or failed to do what was required. Where the order requires the payment of money, he or she has to prove that it was not paid. Moreover, because the purpose of civil contempt proceedings is to coerce future compliance, *id.,* the defendant must have been fully capable of having complied; in addition, the ability to perform the act required by the court order must have been within the power of the defendant. *Elzey* [*v. Elzey* ], 291 Md. [369,] 374, 435 A.2d [445,] 447 [ (1981) ](quoting *Williams & Fulwood v. Director,* 276 Md. 272, 313, 347 A.2d 179, 201 (1975)), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2178, 48 L.Ed.2d 801 (1976). *See People v. Razatos,* 699 P.2d 970, 974 (Colo.1985). "The 'choice' must. be the defendant's 'as to whether [he can] comply.'" *Elzey,* 291 Md. at 374, 435 A.2d at 447.

*Lynch,* 342 Md. at 520–21, 677 A.2d at 590. We went on to point out that whether the defendant is able to comply with the court order is a matter of defense. *Id.* at 521, 677 A.2d at 590 (citing *Johnson v. Johnson,* 241 Md. 416, 420, 216 A.2d

914, 917 (1966)). If that defense is to be successful, the defendant must show that he or she is unable to conform his or her conduct in compliance with the court order. *Id.* "Moreover, the issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his present ability to pay." *Elzey,* 291 Md. at 374, 435 A.2d at 448. Neither a finding of contempt nor subsequent imprisonment is permitted otherwise.

▉ In this case there was absolutely no evidence offered which tended to show that the petitioner had a present ability to comply with the court order. Indeed, just the opposite appears to be the case. As the court's remarks demonstrate, its findings as to contempt and the purge provisions were predicated on a belief that the petitioner could get the required amount, that he had access to funds. That belief, so far as the record reflects, was in turn based on no more than the court's speculation from the facts that the petitioner was working for his father's business, being run by his brother, and that the petitioner sometimes let his sister hold money for him. There is no more substance to the findings made in this case than there were to those made in *Lynch.*[5]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

WILNER, J., files concurring opinion.

WILNER, Judge, concurring.

I concur in the result reached by the Court in this case. My concurrence is based on my agreement that (1) this case,

---

**5.** The Court of Special Appeals is simply wrong in its conclusion that the release of the petitioner on bail pending appeal rendered the issue of his present ability to comply moot. *Lynch,* 342 Md. at 529, 677 A.2d at 594; *Williams v. Williams,* 63 Md.App. 220, 225–26, 492 A.2d 649, 651–52 (1985).

which was tried before January 1, 1997, is governed by the pronouncements and holdings in *Lynch v. Lynch*, (2) under those holdings, the court was precluded from entering a finding of civil contempt unless the evidence showed that Ott had the financial ability, then and there, to discharge his obligation under the support order, and (3) there was no evidence that he had such ability.

Fortunately, as noted by Chief Judge Bell in footnote 2 of his opinion, some of the rigid pronouncements and holdings of *Lynch* have since been superseded in support cases by the adoption of Md. Rule 15–207(e), which, as amended by this Court on December 10, 1996, took effect January 1, 1997.[1] I write separately to emphasize the point made in the footnote that the Court's opinion in this case will not control cases of this kind decided after January 1, 1997.

In adopting Rule 15–207(e), with the amendments submitted by the Rules Committee at the Court's invitation, the Court has expressly overruled the holding in *Lynch*, as to support cases, that a finding of constructive civil contempt cannot be made unless the evidence establishes that, on the day of the finding, the defendant has the ability to purge the contempt. Wisely, in my view, the law now separates the ability to find a civil contempt from the options available to punish it. Subject only to two stated conditions, the rule expressly allows the court to find a civil contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor "has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing." The conditions, stated in § (e)(3) of the Rule, preclude a

---

1. Regrettably, the current 1997 edition of the Maryland Rules does not contain the amended version of Rule 15–207(e). The new contempt rules, submitted as part of the Rules Committee's 132nd Report, were initially adopted on June 10, 1996. At the Court's direction, the Rules Committee reconsidered those rules in light of *Lynch v. Lynch*, and, in a supplement to its 132nd Report, submitted amendments specifically designed to overrule some of the holdings in *Lynch*. This Court adopted those amendments on December 19, 1996, which, apparently, was too late for them to be included in the 1997 Volume of the Maryland Rules.

finding of contempt only if, and to the extent that, the alleged contemnor proves by a preponderance of the evidence that (1) from the date of the support order through the date of the hearing, he or she "(i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment," or (2) enforcement by contempt is barred by limitations.

If the court finds the person in civil contempt, it must enter an order stating the amount of arrearage for which enforcement by contempt is not barred by limitations, any sanction imposed for the contempt, and how the contempt may be purged. In that last regard, the rule provides that, if the contemnor does not have the present ability to purge the contempt, "the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments."

A Committee Note to the rule warns that, "[i]f the contemnor fails, without just cause, to comply with any provision of the order, a criminal contempt proceeding may be brought based on a violation of that provision." The clear intent of the Court, in adopting Rule 15–207(e), as amended, was to abrogate unnecessary impediments to the effective enforcement of spousal and child support orders.

I would hope that, consistent with the concerted efforts of the Congress and the Maryland General Assembly, the courts of this State, while respecting in every detail the Constitutional rights and privileges of all persons charged with contemptuous disobedience of court-entered support orders, will nonetheless use the new rule as it was intended to be used and force recalcitrant obligors, by every lawful and available means, to discharge their obligations timely and faithfully.